569 A.2d 346

Pavle PAUL, M.D., Appellee,

v.

LANKENAU HOSPITAL and Ralph F. Moriarty.

**Appeal of LANKENAU HOSPITAL.**

Supreme Court of Pennsylvania.

Argued Oct. 23, 1989.

Decided Feb. 1, 1990.

Reargument Denied March 29, 1990.

Otis W. Erisman, James D. Crawford, David G. Battis, Philadelphia, for appellants.

Jeffrey L. Pettit, Philadelphia, for Pavle Paul, M.D.

Terry L. Fromson, Sharon M. Dietrich, Philadelphia, for amicus-Philadelphia Unemployment Project.

Before NIX, C.J., and FLAHERTY, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This case causes us to review once again our jurisprudence on the subject of employment at-will in Pennsylvania.

Appellee, Dr. Pavle Paul, is a Yugoslavian physician who emigrated to the United States where he was employed by Appellant, Lankenau Hospital, from 1962 until his resignation on August 20, 1980. Dr. Paul sued the hospital for compensatory damages based on his claims that the hospital was estopped from discharging him for removing five refrigerators, allegedly without permission, and that such discharge caused him to be defamed. In his suit before a jury against Lankenau Hospital, he claims further that he was forced to resign because of false charges stemming from his removal of the five refrigerators from Lankenau, even though he insists he had authorization to take them.

The record shows that during his lengthy tenure at the hospital, Dr. Paul had removed numerous items from the hospital's storage, mainly discarded medical equipment, which he would sell for profit or send to Yugoslavia. It is uncontested that material taken previously was with per-

mission, and the only concern of this case is with the taking of the five refrigerators. At all times, Dr. Paul has maintained that he was given oral approval by a storeroom manager to transport the refrigerators. On August 20, 1980, nevertheless, he was asked to sign the letter of resignation on the grounds that he had taken the refrigerators without proper authorization.[1]

In his suit, Dr. Paul raised nine complaints in Torts and Contracts.[2] The trial court granted a non-suit on all counts of the Complaint excepting Count IV, estoppel and detrimental reliance, which was permitted to go to the jury with four special interrogatories:

(1) Do you find that plaintiff Pavle Paul had permission from David D'Urbanis to take the refrigerators from Lankenau Hospital?

(2) Do you find that it was reasonable for plaintiff to rely on permission from David D'Urbanis to take the refrigerators from Lankenau Hospital and that plaintiff fully

---

**1.** The record establishes that his termination was due to the allegation that he had taken the refrigerators without permission. Dr. William L. Holmes, his immediate supervisor, testified that the hospital's president, Ralph F. Moriarty, suggested the resignation:

It was the following morning, I guess it was the 17th of August, that Mr. Moriarty called me to his office. We exchanged greetings and chatted for a minute or two, and then he told me about the incident, that Mr. Broderick and Mr. Gattner had investigated it thoroughly, and that they were convinced that the refrigerators had been taken illegally, and that he felt that it would be best, and probably appropriate, if we were to ask Dr. Paul for his resignation rather than take alternative action. (T.T., p. 192).

**2.** Count I alleged breach of contract as a violation of the By–Laws of the Medical Staff; Count II insisted that Dr. Paul could not be terminated because he was a third party beneficiary of research grants from the National Institute of Health; Count III alleged breach of implied contract in that Dr. Paul could be fired for just cause only and that he had provided additional consideration in the form of an infant care unit which he gave to the hospital; Count IV maintained that because he had been given permission over the previous years to take the equipment, the hospital was equitably estopped from raising the issue as a basis for termination; Counts V, VI and VII raised violations of public policy in that he was threatened by criminal coercion and also suffered from abusive termination with intent to harm; Count VIII alleged defamation; and Count IX complained that the wrongful termination caused him to suffer intentional infliction of emotional distress.

satisfied any duty that he may have had to inquire whether the refrigerators were of no further use to the hospital?

(3) Do you find that defendant Lankenau Hospital acted reasonably and believed in good faith that plaintiff Pavle Paul had taken the refrigerators without permission?

(4) Do you find that plaintiff Pavle Paul resigned voluntarily from his employment at Lankenau Hospital?

The jury answered all four interrogatories in favor of Dr. Paul.

Then proceeding to the damages phase of trial, the jury awarded Dr. Paul the sum of $410,000, representing loss of all future earnings. President Judge Richard S. Lowe, however, remitted the award to $128,000, the amount Appellee would have earned from the time of his resignation to the date of the jury verdict.

Both parties filed post-trial motions. Lankenau insisted that it was entitled to a judgment notwithstanding the verdict or a new trial on the grounds that estoppel is not a legal exception to the power of termination under an employment at-will status and the issue should not have gone to the jury. Dr. Paul sought removal of the non-suits. A panel of the Superior Court affirmed the decision below, 375 Pa.Super. 1, 543 A.2d 1148, and Dr. Paul filed allocatur with this Court, while the hospital asked for reargument. When reargument was granted, Dr. Paul withdrew his allocatur petition.

The Superior Court en banc affirmed both the estoppel decision as to Count IV of the Complaint, as well as the nonsuits on the remaining counts, excepting Count VIII, defamation. On the defamation claim, the Superior Court concluded that dismissal of an innocent employee on an allegation of theft can support a cause of action for defamation and on the facts of this case, the jury should have been allowed to decide the matter.

The instant appeal derives solely from Lankenau's efforts to reverse the Superior Court on those two issues. As part

of its estoppel argument, Lankenau also claims that damages under an at-will employment status should be limited to one year's wages.

## A. *The Estoppel Issue*

■ We are urged by Appellee and amicus [3] to read our controlling case, *Geary v. United States Steel*, 456 Pa. 171, 319 A.2d 174 (1974), as a breakthrough in the recognition of some restrictions on the doctrine of employment at-will. Also see, Comment, *The Role of Federal Courts in Changing State Law: The Employment At Will Doctrine in Pennsylvania*, 133 U.Pa.L.Rev. 227, 249 (1984), which concluded that "*Geary* was among the first five cases in the country to admit even the possibility of an exception to the doctrine of employment at will."

*Geary* involved a discharge based on an employee's report to his superiors concerning the unsafe nature of the steel pipe being manufactured and sold by the company. The majority in a 4–3 decision [4] held that while some exceptions to the at-will employment doctrine might exist, especially in public policy areas, "this case does not require us to define in comprehensive fashion the perimeters of this privilege, and we decline to do so." 319 A.2d at 180. Moreover:

> The Pennsylvania law is in accordance with the weight of authority elsewhere. Absent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason. This power of termination is explicitly recognized in the Restatement of Torts, § 762, Privilege of Selecting Persons for Business Relations:

319 A.2d at 176 (footnotes omitted).

The Court specifically answered in the negative to the central question of "whether the time has come to impose

3. The Philadelphia Unemployment Project.

4. Both Mr. Justice Nix, now Chief Justice, and Mr. Justice Louis Manderino dissented. Mr. Justice Samuel J. Roberts filed a dissenting opinion.

judicial restraints on an employer's power of discharge." 319 A.2d at 176.

Our most recent reaffirmation of *Geary* is *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917 (1989), in which Mr. Justice Flaherty wrote:

It should be noted that, as a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship. *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy.

559 A.2d at 918.

Also, see Mr. Chief Justice Nix's concurring statement that "this Court did not announce a cause of action for wrongful discharge in *Geary*. Indeed the language in *Geary* clearly states that a cause of action for wrongful discharge in an at-will employment relationship does not exist." 559 A.2d at 923.

The *Geary–Clay* analysis is dispositive of the instant case. The doctrine of equitable estoppel is not an exception to the employment at-will doctrine. An employee may be discharged with our without cause, and our law does not prohibit firing an employee for relying on an employer's promise. In the absence of a legally cognizable cause of action, the trial court erred in submitting the issue to the jury.

### B. *The Defamation Issue.*

The defamation issue is waived under Pa.R.C.P. No. 227.1(b)(2):

(b) Post-trial relief may not be granted unless the grounds therefor,

(2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless

leave is granted upon cause shown to specify additional grounds.

Also see, *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974) and *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975).

As simply stated in his Motion for Removal of Nonsuit which he brings under 227.1: "Plaintiff produced sufficient evidence to produce all essential elements of his claim under Count VIII for defamation." Such boilerplate assertions fail to meet the specificity requirements of Rule 227.1. See, the Comment:

Subdivision (b)(2) specifies the requisites of the motion for post-trial relief. It must state the specific grounds for the relief sought and "how the grounds were asserted in pre-trial proceedings or at trial."

In requiring the motion to state the specific grounds therefore, motions which set forth mere "boilerplate" language are specifically disapproved. A post-trial motion must set forth the theories in support thereof "so that the lower court will know what it is being asked to decide," *Frank v. Peckich*, 257 Pa.Super. 561, 391 A.2d 624, 632–633 (1978).

We hold that the grounds for review of the defamation claim were not properly preserved, and there was no basis upon which the Superior Court could have granted review. See, *Wiegand*, 337 A.2d at 257–258.

Accordingly, we reverse both decisions of the Superior Court to allow a cause of action for defamation and to affirm the estoppel ruling of the trial court.

LARSEN and McDERMOTT, JJ., did not participate in the consideration or decision of this matter.

ZAPPALA, J., files a concurring opinion.

ZAPPALA, Justice, concurring.

While I join in Part A of the majority's opinion regarding the issue of at-will employment, I must concur only in the result reached in Part B. Unlike the majority, I find that

the Appellee sufficiently preserved the issue of his defamation claim in his post-trial motions. The purpose of Pa.R.C.P. No. 227.1 is to apprise the trial court of the basis of the litigant's claim of alleged errors. In this instance, the Appellee indicated in his post-trial motion that the evidence was sufficient to establish a cause of action in defamation. Such allegation satisfies Rule 227.1.

Although I disagree with the majority on the waiver issue, I nevertheless agree with the majority's disposition of the defamation claim. One of the elements necessary to establish defamation is a communication. 42 Pa.C.S. § 8343. Absent in this record is any evidence to establish any communication of defamatory material. At best, the Appellee bases his theory of defamation on innuendo and supposition. As such, the trial court correctly granted the Appellant's non-suit. For this reason, I agree with the result reached by the majority in Part B.