**Sarah BORSE, Plaintiff,**

v.

**PIECE GOODS SHOP, INC., Defendant.**

**Civ. A. No. 90–5780.**

United States District Court, E.D. Pennsylvania.

Feb. 13, 1991.

Sidney L. Gold and Hyman Lovitz, Lovitz & Gold, P.C., Philadelphia, Pa., for plaintiff.

Richard E. Santee, Jr., Shay, Santee & Kelhart, Bethlehem, Pa., for defendant.

---

## MEMORANDUM AND ORDER

HUYETT, District Judge.

This civil action raises the issue whether plaintiff has stated a claim under the laws of the Commonwealth of Pennsylvania for wrongful discharge from her employment. Plaintiff alleges she was wrongfully discharged by her employer in violation of public policies articulated in the First and Fourth Amendments of the United States Constitution. Defendant moves pursuant to Federal Rule Civil Procedure 12(b)(6) to dismiss plaintiff's complaint for failing to state a claim upon which relief can be granted. For the reasons stated below, I grant defendant's motion.

### I.

In resolving a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept as true all well-plead allegations in the complaint, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable interpretation of the pleadings, the plaintiff may be entitled to relief. *Estate of Bailey v. County of York,* 768 F.2d 503, 506 (3d Cir.1985); *Helstoski v. Goldstein,* 552 F.2d 564, 565 (3d Cir.1977) (per curiam). Also, Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." (citations omitted) *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989).

### II.

Plaintiff alleges she was employed by defendant as a sales clerk for fifteen years until she was fired on February 9, 1990. In January of 1990, defendant adopted a drug and alcohol policy requiring all employees to execute a consent to urinalysis screening for drug use as a precondition for continued employment. This consent also authorized the defendant to conduct searches of an employee's personal property located on the employer's premises.

Plaintiff refused to sign the consent form arguing that her employer's drug and alcohol policy constituted an unreasonable interference with her right to privacy and a violation of her right to be free from unreasonable searches and seizures as guaranteed by the United States Constitution. Because of her refusal, plaintiff was fired. In her complaint, plaintiff does not plead a direct constitutional violation against her employer. Rather, she asserts that "defendant's actions in terminating the plaintiff's employment was in violation of public policy as enunciated in the First and Fourth Amendments to the United States Constitution which preclude an employer from engaging in activities that would violate an employee's right to privacy and right to be free from unreasonable searches and seizures of the person and property." Plaintiff's Complaint Par. 11.

In essence, plaintiff asserts the grounds for her discharge violate a public policy as embodied in the First and Fourth Amendments of the United States Constitution and, hence, fall within the public policy exception to the employment-at-will doctrine under Pennsylvania law.

### III.

Jurisdiction over plaintiff's claim is established by diversity of citizenship of the parties, 28 U.S.C. § 1332. My function is to apply the law of Pennsylvania, *Wolk v. Saks Fifth Ave. Inc.,* 728 F.2d 221 (3d Cir.1984). After reviewing the body of law constituting the wrongful discharge cause of action, it is clear that I do not have the benefit of firm guidance from the Pennsylvania Supreme Court. Nonetheless, I must "predict the position which that court would take in resolving this dispute." *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 364 (3d Cir.1990).

#### A. The Pennsylvania Supreme Court

Under Pennsylvania law, absent a statutory or contractual regulation of an employment relationship, the doctrine of employment-at-will permits an employer to discharge an employee with or without cause. *Henry v. Pittsburgh and Lake Erie Railroad Company,* 139 Pa. 289, 21 A. 157 (1891); *Clay v. Advanced Comp.*

*Applications,* 522 Pa. 86, 559 A.2d 917 (1989). However, a public policy exception to this general rule has been recognized. In *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974), the Pennsylvania Supreme Court outlined the contours of this exception:

> It may be granted that there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened.... We hold only that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge. *Id.* 319 A.2d at 180.

Ultimately, the court in *Geary* did not find that a cause of action had been stated under these precepts. Moreover, the *Geary* court declined to "define in comprehensive fashion the perimeters of this privilege...." *Id.* This has left courts to shape the public policy exception on a "case-by-case basis." *See Turner v. Letterkenny Federal Credit Union,* 351 Pa. Super. 51, 505 A.2d 259, 261 (1985); *Yaindl v. Ingersoll–Rand Co.,* 281 Pa.Super. 560, 422 A.2d 611, 617 (1980).

To date, Pennsylvania courts, federal district courts and the Court of Appeals for the Third Circuit have all read *Geary* as creating a limited public policy exception to the employment-at-will doctrine. *Smith v. Calgon Carbon Corp.,* 917 F.2d 1338, 1343 (3d Cir.1990). However, it is unclear whether the Pennsylvania Supreme Court reads *Geary* as creating a public policy exception.

The Pennsylvania Supreme Court has yet to affirmatively recognize a wrongful discharge cause of action in a case before it. In declining to do so, the court has described the public policy exception as extremely narrow or non-existent. In *Clay v. Advanced Computer Applications, Inc.,*

522 Pa. 86, 559 A.2d 917 (1989), the common law principle of employer prerogatives under the at-will employment relationship was restated, followed by recognition of an exception applicable "in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." *Id.* 559 A.2d at 918. However, in his concurring opinion in *Clay,* Chief Justice Nix disclaimed Supreme Court recognition of a wrongful discharge cause of action: "Contrary to the Superior Court's view, this Court did not announce a cause of action for wrongful cause in *Geary.* The language relied upon by the Superior Court in its analysis of *Geary* was gratuitous *dicta* and could not possibly have created a tort cause of action for wrongful discharge." Nix, C.J., concurring. *Id.* 559 A.2d at 923.

Most recently, the Pennsylvania Supreme Court explicitly adopted Chief Justice Nix's view expressed in *Clay* and characterized *Geary* as refusing to impose "judicial restraints on an employer's power of discharge." *Paul v. Lankenau Hospital,* 524 Pa. 90, 569 A.2d 346 (1990).

Faced with this uncertainty, the Third Circuit has continued to interpret *Geary* as creating a limited public policy exception "in the absence of a *clear* statement by the Pennsylvania Supreme Court to the contrary." (emphasis in original) *Smith v. Calgon Carbon Corp.,* 917 F.2d 1338, 1343 (3d Cir.1990). Hence, I shall proceed in a manner consistent with the position of the Third Circuit.

## B. The Public Policy Exception—Statutory

Turning to the development of the public policy exception to the wrongful discharge cause of action, this exception is most frequently applied when a discharge is based on an employee's decision to comply with or refusal to violate a statute, *Woodson v. AMF Leisureland Centers, Inc.,* 842 F.2d 699 (3d Cir.1988), and no statutory recourse is available to the discharged employee. *Clay v. Advanced Computer Application, Inc.,* 522 Pa. 86, 559 A.2d 917 (1989). On two occasions the Pennsylvania Superior

Court has upheld a wrongful discharge cause of action when an employer discharged an employee in violation of a public policy stated in statutes. *Fields v. Philadelphia Electric Comp.*, 388 Pa.Super. 400, 565 A.2d 1170 (1989) (employee, hired as expert in nuclear safety, discharged for making statutorily required report to Nuclear Regulatory Commission); *Reuther v. Fowler and Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978) (employee cannot be discharged for serving on a jury).

Similarly, federal courts have held a wrongful discharge cause of action is pled when an employee is discharged in violation of a public policy embodied in a statute. *See e.g., Woodson v. AMF Leisureland Centers, Inc.*, 842 F.2d 699 (3d Cir. 1988) (employee fired for refusing to serve a visibly intoxicated person in violation of Pennsylvania law, wrongful discharge claim is stated); *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363 (3d Cir.1979) (employee fired for refusal to a take polygraph test, when statute forbids polygraph testing); *Michelson v. Exxon Research and Engineering Co.*, 629 F.Supp. 418 (W.D.Pa.1986), aff'd 808 F.2d 1005 (3d Cir. 1988) (public policy exception applies to employee exercising workers' compensation rights); *Shaw v. Russell Trucking Line, Inc.*, 542 F.Supp. 776 (W.D.Pa.1982) (wrongful discharge for firing an employee for reporting motor vehicle violations); *McNulty v. Borden, Inc.*, 474 F.Supp. 1111 (E.D.Pa.1979) (wrongful discharge for firing employee for refusal to participate in antitrust violations).

## C. The Public Policy Exception—Constitutional

More relevant to the issue at hand, in *Novosel v. Nationwide Insurance Company*, 721 F.2d 894 (3d Cir.1983), the Third Circuit found in the First Amendment of the United States Constitution and Article I, Section 1 of the Pennsylvania Constitution a source of public policy. There, plaintiff was fired for privately stating his opposition to his employer's political position and refusing to participate in an after-work lobbying effort sponsored by his employer.

Plaintiff alleged that his discharge violated the public policy precepts of the First Amendment. Defendant responded by arguing that a wrongful discharge cause of action may be maintained only if the termination violated a statutorily recognized public policy. The district court dismissed the complaint and held that an employee waives or relinquishes "otherwise valid constitutional rights when an employee voluntarily engages in employment...." *Id.* at 898.

The *Novosel* court reversed the district court by holding that constitutional amendments are declarations of public policy available for consideration under the public policy exception of the wrongful discharge cause of action:

> Given that there are no statutory remedies available in the present case and taking into consideration the importance of the political and associational freedoms of the federal and state Constitutions, the absence of a statutory declaration of public policy would appear to be no bar to the existence of a cause of action. Accordingly, a cognizable expression of public policy may be derived in this case from either the First Amendment of the United States Constitution or Article I, Section 7 of the Pennsylvania Constitution. *Novosel*, 721 F.2d at 899.

In noting that *Geary* had explicitly limited any exception to the employment-at-will doctrine to a recognized public policy, *Novosel* went on to define a policy of this nature as "one that 'strikes at the heart of a citizen's social right, duties and responsibilities,'" (citation omitted). *Id.* Also, the court held that an employee's freedom of political expression is a societal interest no less compelling than fulfilling jury service obligations or the filing of workers' compensation claim. *Id.* Arguably, *Novosel* supports plaintiff's claim of wrongful discharge based on the employer's violation of a public policy as manifest in the First and Fourth Amendments.

However, *Novosel* marks the beginning, not the end, of my inquiry. Although the Pennsylvania Superior Court has referred to the *Novosel* definition of a recognized

public policy, *see e.g., Hineline v. Strouds-burg Electric Supply Com. Inc.*, 384 Pa. Super. 537, 559 A.2d 566 (1989); *Rinehim-er v. Luzerne Cty. Com. College*, 372 Pa. Super. 480, 539 A.2d 1298 (1988); *Marsh v. Boyle*, 366 Pa.Super. 1, 530 A.2d 491 (1987); *Householder v. Kensington Mfg. Co.*, 360 Pa.Super. 290, 520 A.2d 461 (1987), this court has not recognized a wrongful dis-charge public policy emanating from a con-stitutional amendment. Also, it has formu-lated a list of appropriate sources of public policy, which does not explicitly include constitutions or constitutional amendments. *Cisco v. United Parcel Services, Inc.*, 328 Pa.Super. 300, 476 A.2d 1340 (1984) ("the sources of public policy [which may limit the employer's right of discharge] include legislation; administrative rule, regulation, or decision; and judicial decision. In cer-tain instances, a professional code of ethics may contain an expression of public poli-cy...." *Id.* at 306, 476 A.2d 1340.); *Dar-lington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306 (1986).

Federal courts sitting in diversity juris-diction have not relied on the reasoning of *Novosel* to find a public policy stated in a constitution. Moreover, in *Wolk v. Saks Fifth Ave. Inc.*, 728 F.2d 221 (3d Cir.1984) the court pointed out that *Novosel* must be "understood against the backdrop of the limited role of a federal court sitting in diversity jurisdiction. While a federal court must be sensitive to the doctrinal trends of the jurisdiction whose law it ap-plies, it is beyond the authority of a federal court in such circumstances to create en-tirely new causes of action. *Id.* at 223. *Cf. Smith v. Calgon Carbon Corp.*, 917 F.2d 1338 (3d Cir.1990). Consistent with the view stated in *Wolk v. Saks Fifth Ave. Inc., supra, Novosel* is not read expansive-ly. *E.g., Staats v. Ohio National Life Insurance Com.*, 620 F.Supp. 118 (W.D.Pa. 1985) (freedom of association to associate with non-spouse at employer's convention not a recognized facet of public policy); *Ferguson v. Freedom Forge Corp.*, 604 F.Supp. 1157 (W.D.Pa.1985) (freedom to as-sociate with former supervisor does not rise to public policy level). Indeed, a con-stitutional public policy exception has not developed under the reasoning of *Novosel*, or any other authority.

More relevant, recent Pennsylvania Supe-rior Court decisions militate against the application of *Novosel* to plaintiff's First and Fourth Amendment public policy claim. In *Hershberger v. Jersey Shore Steel Co.*, 394 Pa.Super. 363, 575 A.2d 944 (1990), plaintiff was required as a condition of employment to submit blood and urine tests for alcohol and drug use. After his urine sample tested positive for cannabi-noids (marijuana), defendant requested plaintiff to resign. Failing that he would be fired. Plaintiff resigned but within an hour returned to his former employer and unsuccessfully requested to submit to an-other test. Plaintiff then unilaterally sub-mitted samples to the testing facility, which tested negative. Confronted with the negative test results, his former em-ployer nonetheless refused to rehire him.

In a civil action against his former em-ployer, plaintiff alleged, *inter alia,* a claim of wrongful discharge, which was non-suit-ed at trial. On appeal plaintiff argued his discharge violated a public policy against relying on a single test to determine the presence of contraband which, if positive, is not then confirmed by a second, distinctly different test. In essence, plaintiff urged the court to find a public policy against reliance on a single scientific testing proce-dure as grounds for discharge.

After reviewing the Pennsylvania Su-preme Court's decisions in *Geary, supra; Clay, supra;* and *Paul, supra,* the court held that:

the evidence does not establish the pres-ence of a 'clear' mandate in the form of public policy allowing for the existence of a cause of action for wrongful dis-charge founded upon the use of a drug screening test, the results of which are not confirmed by an alternative scientific procedure and lead to an individual's loss of employment. *Hershberger*, 575 A.2d at 947.

In addressing the issue of whether a public policy requires double testing of urine samples, the court implicitly holds,

*sub silentio,* that no public policy, constitutional or otherwise, inhibits a private employer from requiring its employees to submit to urine testing for the presence of drugs and alcohol. Under this reasoning, an employee discharged for refusing to submit to this form of drug and alcohol testing would not have a cause of action for wrongful discharge.

More directly, the Pennsylvania Superior Court has in *Booth v. McDonnell Douglas Truck Services Inc.,* —— Pa.Super. ——, 585 A.2d 24 (1991), rejected reliance on Article I, Section 17 of the Pennsylvania Constitution as a source of public policy for maintaining a wrongful discharge cause of action. There, plaintiff alleged, *inter alia,* that his discharge violated a provision of the Pennsylvania Constitution prohibiting laws impairing the obligations of contracts. After referring to the *Novosel* definition of a public policy under the wrongful discharge claim ("go to the heart of a citizen's rights, duties, and responsibilities...." (citation omitted) *Id.* at ——, 585 A.2d at 28), the court rejected the Pennsylvania Constitution as a source of public policy. In contrast to *Novosel,* this court held that the dispute was "between private parties; as no allegation of state action has been made, the constitutional provision cited by [plaintiff] does not apply." *Id.* at ——, 585 A.2d at 28. Hence, plaintiff was not permitted to use a constitutional provision as a source of public policy for his wrongful discharge claim. The Pennsylvania Superior Court's requirement of state action in this case is no less applicable to plaintiff's cause of action under policies manifested in the First and Fourth Amendments of the United States Constitution.[1]

## IV.

Plaintiff requests this court to view her First Amendment right to privacy and Fourth Amendment right to be free from unreasonable searches and seizures as creating a clearly mandated public policy under Pennsylvania's emerging wrongful discharge cause of action.

Plaintiff's reliance on *Novosel* is logical, but unavailing in light of more recent decisions of the Pennsylvania Superior Court. Regardless of how cogent the reasoning in *Novosel* may appear to be, as a district court sitting in diversity jurisdiction I must look to Pennsylvania law in its current state as my primary authority. As noted, the decisions of the Pennsylvania Superior Court in *Booth v. McDonnell Douglas Truck Services, Inc.,* —— Pa.Super. ——, 585 A.2d 24 and *Hershberger v. Jersey Shore Steel Co.,* 394 · Pa.Super. 363, 575 A.2d 944 (1990), have clearly diminished the strength of *Novosel* as authority to the point where it no longer adequately supports plaintiff's theory. Hence, I hold that as a matter of law plaintiff has not stated a claim upon which relief can be granted.

An appropriate order follows.

IT IS SO ORDERED.

### ORDER

Upon consideration of defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) Federal Rules of Civil Procedure, plaintiff's response, and for the reasons stated in the accompanying memorandum, IT IS ORDERED that defendant's motion to dismiss the complaint is GRANTED. The complaint is DISMISSED. Defendant's request to strike plaintiff's claim of damages for emotional distress is DENIED as moot.

IT IS SO ORDERED.

---

**1.** In further support of this interpretation of *Booth,* I note that in *Yetter v. Ward Trucking Corp.,* —— Pa.Super. ——, 585 A.2d 1022 (1991), the trial court dismissed plaintiff's wrongful discharge cause of action based on the employer's violation of plaintiff's constitutional right to freedom of speech. Plaintiff did not appeal this dismissal.