James MULGREW, Plaintiff,

v.

SEARS ROEBUCK & CO., Defendant.

Civ. A. No. 93–5832.

United States District Court,
E.D. Pennsylvania.

Oct. 5, 1994.

David William Wolf, Philadelphia, PA; for plaintiff.

Vincent A. Cino, Timothy D. Speedy, Jackson, Lewis, Schnitzler & Krupman, Morristown, NJ, Mark S. Shiffman, Jackson, Lewis, Schnitzler & Krupman, Pittsburgh, PA, for defendant.

### MEMORANDUM AND ORDER

YOHN, District Judge.

James Mulgrew ("Mulgrew") initiated this diversity action against his former employer, Sears Roebuck & Company ("Sears"), asserting wrongful discharge, intentional infliction of emotional distress, and intentional and/or negligent misrepresentation.

Sears has moved to dismiss the complaint or, in the alternative, for summary judgment on all counts. The issues before this court are 1) whether Pennsylvania recognizes a cause of action for a claim for wrongful discharge with specific intent to harm; 2) whether plaintiff has a valid cause of action under a public policy exception to the Pennsylvania employee-at-will doctrine; and 3) whether Mulgrew has met his burden of demonstrating the elements of intentional infliction of emotional distress and intentional and/or negligent misrepresentation.

Since Pennsylvania does not recognize a specific intent to harm exception to at-will employment and Mulgrew has not alleged a violation of a clear mandate of public policy as required to sustain a claim for wrongful discharge, defendant's motion to dismiss Count I of plaintiff's complaint will be granted. Further, because the actions taken to terminate Mulgrew did not constitute extreme and outrageous conduct, defendant's motion to dismiss plaintiff's claim of intentional infliction of emotional distress will be granted. Finally, after viewing the facts in a light most favorable to plaintiff, defendant's motion to dismiss plaintiff's charge of intentional and/or negligent misrepresentation will be denied. Defendant's motion for summary judgment for intentional and/or negligent misrepresentation will likewise be denied as there exist genuine issues of material fact.

### Standard

#### A. Motion to Dismiss

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. *Sturm v. Clark*, 835 F.2d 1009,

1011 (3d Cir.1987). In reviewing a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. *Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). A court must determine whether the party making the claim would be entitled to relief under any set of facts that could be established in support of his or her claim. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984).

### B. *Summary Judgment*

On a motion for summary judgment a court must consider the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits to determine whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In making this determination, all reasonable inferences must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The initial burden of demonstrating the absence of a genuine issue of material fact is on the moving party. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991).

### Facts

According to plaintiff's complaint, after twenty-one years of employment at Sears, he was fired from his position as a sales manager in December of 1991. (Compl. at ¶ 6) Throughout his tenure at Sears, which began when he was hired as a "floorman" in 1970, Mulgrew received various promotions and commendations. (Compl. at ¶ 7) In the fall of 1990, however, plaintiff received a "Deficiency Memorandum" from his immediate supervisor, Al Dubeck. (Compl. at ¶¶ 6–10) Again in January and then in May plaintiff received unsatisfactory reviews. (Compl. at ¶¶ 11, 13) On June 6, 1990, Dubeck sent electronic mail to the Regional Sears Manager, James Curran, concerning future Mulgrew evaluations. (Compl. at ¶ 15) This communication detailed when Mulgrew should receive his next deficiency review, what tone the review should take, and then stated that "he [Mulgrew] will take us to Court or at least see a lawyer and claim that we are being unfair." *Id.*

Plaintiff claims that following these reviews he wrote to the National Head of his department concerning the manner in which the evaluations were being given but received no reply. (Compl. at ¶ 19) In mid July, Mulgrew was told that he had to improve within thirty days or be fired. (Compl. at ¶ 18) In December, Mulgrew was discharged for allegedly violating company policies. (Compl. at ¶ 21) Mulgrew denies having committed these violations, (Ans. and Objections of Plaintiff at no. 18), arguing that he was deliberately put in a situation in which he was unable to properly execute jobs and assignments and led to believe that he would be given the opportunity to rectify the problems. (Brief in Opp. to Defendant's Motion at pp. 10–12) Plaintiff further contends that he was fired as a result of Sear's willful intent to injure him and to bar Mulgrew from being able to seek redress under federal and state age discrimination statutes when he turned forty. (Compl. at ¶ 23) At the time he was discharged, Mulgrew was thirty-eight. *Id.* When the Sears store finally closed due to financial problems, Mulgrew was forty years old.

### Discussion

### Count I: *Wrongful Discharge*

### A. Specific Intent To Harm

Although there has been debate concerning whether Pennsylvania recognizes a cause of action for wrongful discharge based upon a theory of an employer's specific intent to harm, *see Altopiedi v. Memorex Telex Corp.*, 834 F.Supp. 800 (E.D.Pa.1993); *Yetter v. Ward Trucking Co.*, 585 A.2d 1022 (Pa.Super.Ct.1991); and *Krajsa v. Keypunch*, 622 A.2d 355 (Pa.Super.Ct.1993), based upon the Pennsylvania Supreme Court's decisions in *Geary v. United States Steel Corp., infra*, *Clay v. Advanced Computer, supra*, and *Paul v. Lankenau Hospital, infra*, this court finds that no such exception is recognized.

The confusion over whether there exists such a cause of action to harm stems from the Pennsylvania Supreme Court's analysis of plaintiff's arguments in *Geary v. U.S. Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). The *Geary* court began its discussion based upon the premise that "[a]bsent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason." *Id.* 319 A.2d at 176. Drawing a parallel to arguments put forth in cases concerning third party interference with prospective business relationships, the plaintiff urged the court to recognize a specific intent to harm exception. *Id.* at 177–78. The *Geary* court never explicitly rejected plaintiff's argument stating that even if it did accept plaintiff's argument, "under his own theory appellant has failed to state a claim upon which relief can be granted." *Id.* at 180.

In conclusion the *Geary* court announced that:

> this case does not require us to define the perimeters of ... (an employer's right to terminate an at-will employee) and we decline to do so. We hold that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at-will has no right of action against his employer for wrongful discharge.

*Id.* at 180.

The perimeters which the court refused to define in *Geary* were at issue *Clay v. Advanced Computer*, 522 Pa. 86, 559 A.2d 917 (1989). *Clay*, citing *Geary*, premised its decision on the basis that "as a general rule there is no common law cause of action against an employer for termination of an at-will employment relationship," further stating that "[e]xceptions to this rule have been recognized in only the most limited circumstances, where discharges ... would threaten clear mandates of public policy." *Id.* 559 A.2d at 918. With this interpretation of *Geary*, the *Clay* court excluded from its analysis the existence of an exception based on a common law theory of specific intent to harm.

A year later the court revisited employee at-will issues in *Paul v. Lankenau Hospital*, 524 Pa. 90, 569 A.2d 346 (1990), addressing whether Pennsylvania recognizes an estoppel argument as a limitation to an employer's right to discharge. Here the court was "urged by ... (plaintiff) to read our controlling case, *Geary v. United States Steel*, ... as a breakthrough in the recognition of some restrictions on the doctrine of employment at-will." *Id.* 569 A.2d at 348. The court declined to do so.

*Paul* reiterated that absent a clear mandate of public policy, no employee at-will exception is recognized in Pennsylvania. *Id.* The court did not accept the argument that the *Geary* court outlined another exception to the employee at-will doctrine citing Judge Nix's *Geary* concurrence which stated that "this court did not announce a cause of action for wrongful discharge in *Geary*. Indeed the language in *Geary* clearly states that a cause of action for wrongful discharge in an at-will employment relationship does not exist." *Id.* 569 A.2d at 348 (citing *Clay*, 559 A.2d at 923).

Although the Pennsylvania Supreme Court has not again directly addressed this issue, the Pennsylvania Superior Court has repeatedly, although not consistently, read *Geary*, *Clay*, and *Paul* narrowly and held the only recognized at-will exception is for public policy reasons. *Krajsa v. Keypunch*, 424 Pa.Super. 230, 622 A.2d 355, 358 (1993); *Yetter*, 585 A.2d at 1026; *Rutherfoord v. Presbyterian–University Hosp.*, 417 Pa.Super. 316, 612 A.2d 500, 506 (1992); and *Jacques v. Akzo International Salt, Inc.*, 422 Pa.Super. 419, 619 A.2d 748, 753 (1993). *But see Tourville v. Inter–Ocean Ins. Co.*, 353 Pa.Super. 53, 508 A.2d 1263 (1986), and *Booth v. McDonnell Truck Services Inc.*, 401 Pa.Super. 234, 585 A.2d 24, 28 (1991). "The Supreme Court of Pennsylvania ... has never approved of this formulation [specific intent to harm exception] and recently has given every indication that it would reject it. (citing *Paul* and *Clay*) ... These developments in conjunction with Pennsylvania's long preservation of the at-will rule and the

judiciary's refusal to discern violations of public policy in all but a few cases ... dictate the conclusion that in Pennsylvania there is no common law tort for wrongful discharge based on an employer's specific intent to harm." *Robbins v. Galbraith*, 1992 WL 209181 *2, 1992 U.S.Dist. LEXIS 12334 *5 (Aug. 18, 1992) (citing *Asko v. Bartle*, 762 F.Supp. 1229, 1234 (E.D.Pa.1991), agreeing with reasoning in *Yetter*).

Based on Pennsylvania Supreme Court decisions in *Geary*, *Clay* and *Paul*, as well as subsequent Superior Court cases, defendant's motion to dismiss for failure to state a claim with respect to the tort of wrongful discharge with a specific intent to harm will be granted. Contrary decisions, such as *Altopiedi* and *Foley v. Presbyterian Ministers' Fund*, 749 F.Supp. 109 (E.D.Pa.1990), which interpret the Pennsylvania Supreme Court's failure in *Geary* to explicitly reject a specific intent to harm exception as tacit acquiescence, do not adequately take into consideration the holdings in *Clay* and *Paul* as well as a majority of recent superior court decisions.

B. *Public Policy Exception*

■ Pennsylvania courts have only recognized a public policy exception in the most limited circumstances. "Unless an employee identifies a specific expression of public policy violated by his discharge, it will not be labeled as wrongful and within the sphere of public policy." *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 617 (3d Cir.1992), *citing McGonagle v. Union Fidelity Corp.*, 383 Pa.Super. 223, 556 A.2d 878, 885 (1989). The superior court has only recognized "legislation; administrative rules, regulations or decisions; or judicial decisions" as sources of public policy claims upon which an employer's right to discharge an at-will employee may be limited. *Krajsa*, 622 A.2d at 358–59, *citing Cisco v. United Parcel Service, Inc.*, 328 Pa.Super. 300, 476 A.2d 1340, 1343 (1984). Pennsylvania Supreme Court decisions "preclude us from undertaking the task of creating and forming public policy with respect to wrongful discharge on our own initiative." 622 A.2d at 359.

Pennsylvania courts have only found violations of public policy in three instances: (1) denial of public employment based on a prior conviction for which the plaintiff had been pardoned; (2) discharge for fulfilling statutorily required jury duty; and (3) discharge after employee revealed nuclear safety violations as required by statute. *Id.* at 360. The district court has applied the public policy exception in instances where employers have discharged employees based on the employee's voluntary compliance with the federal Occupational Safety and Health Act (OSHA). *See Sorge v. Wright's Knitwear Corp.*, 832 F.Supp. 118 (E.D.Pa.1993).

Mulgrew argues that this court should broadly interpret the scope of the public policy exception by recognizing a claim based upon Sear's alleged intent to deprive plaintiff of the potential to file an age discrimination suit against Sears under the Pennsylvania Human Relations Act (PHRA) or other age discrimination statutes. Being only thirty-eight at the time of his discharge, Mulgrew was a year and a half short of being able to qualify as a "protected class" under the PHRA. For this court to recognize such an attenuated age discrimination claim would defeat explicit legislative intent to protect only those forty or more, disregard Pennsylvania's requirement that a public policy exception only be recognized in the most limited instances and serve to circumvent the preemptive authority of the PHRA in matters of age discrimination. *See Jacques v. Akzo International Salt, Inc.*, 422 Pa.Super. 419, 619 A.2d 748, 753 (1993). It is within the legislature's scope of authority to extend age discrimination protection to those age thirty-eight; this court cannot.

Despite precedent which succinctly states that a public policy exception will only be found in "clearly mandated" instances, *see Clay*, 559 A.2d at 918; *Paul*, 569 A.2d at 348; *Yetter*, 585 A.2d at 1025; *Krajsa*, 622 A.2d at 357, Mulgrew argues that this court should interpret the public policy exception expansively, arguing that there is a trend to recognize non-statutorily based public policy exceptions. Mulgrew cites three cases in support of his interpretation: *Sorge v. Wright's Knitwear Corp., infra*; *Howard v. Fenner Manheim*, PICS No. 94–0719–23–00 (C.C.P. Lancaster, June 23, 1994); and *Reuther v.*

*Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978).

Mulgrew misstates that the public policy exception recognized in *Reuther v. Fowler & Williams* has no statutory basis. Here, the superior court found that there is a public policy exception when an employee is fired for serving on a jury so long as this is the sole reason for the discharge. *Id.* The duty to serve on a jury is found at 42 Pa.C.S.A. § 4501 which states that "all qualified citizens ... shall have the obligation to serve as jurors when summoned for that purpose."

*Sorge* and *Fenner Manheim,* on the other hand, both involve voluntary reporting under federal OSHA statutes. In these cases the employee was discharged for informing or threatening to inform OSHA of employer safety violations. Mulgrew parallels the public policy exception found for discharge based on voluntary OSHA reporting to his case stating that *Sorge* and *Fenner Manheim* demonstrate that public policy exceptions do not have to be based upon statutes. *Sorge* and *Fenner Manheim,* however, differ greatly from the case at hand in that these plaintiffs, even though they were not required to do so, were acting in accordance with federal OSHA regulations which are grounded on federal statutes. In contrast, Mulgrew seeks to have this court carve out a new protected class of people by expanding the scope of those protected by age discrimination statutes to those under forty. Again, it is not within the power of this court to provide plaintiff with an avenue of recovery that the legislature has specifically denied. Defendant's motion to dismiss plaintiff's claim of wrongful discharge will be granted.

### Count II: Intentional Infliction of Emotional Distress

There are four elements that a plaintiff must establish to constitute the tort of intentional infliction of emotional distress: 1) the conduct of defendant must be intentional or reckless; 2) the conduct must be extreme and outrageous; 3) defendant's conduct must cause emotional distress; and 4) the distress must be severe. *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1273 (3d Cir.1979), *citing* Restatement 2d of Torts § 46 (1965). As a preliminary matter, the court must determine if defendant's conduct is so extreme as to warrant recovery. *Cox v. Keystone Carbon Co.,* 861 F.2d 390 (3d Cir.1988). Liability has only been found when the conduct is so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable to civilized society. *Field v. Philadelphia Electric Co.,* 565 A.2d 1170, 1183 (Pa.Super.Ct.1989).

The act of terminating an employee does not provide a basis for maintaining a claim for intentional infliction of emotional distress "and indeed, instances of conduct in the employment context that will support such a claim are extremely rare." *Walker v. Rohm & Haas,* 1994 WL 197162 at *5, 1994 U.S.Dist. LEXIS 6492 at *16, *citing Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988); *Rinehimer v. Luzerne County Community College,* 372 Pa.Super. 480, 539 A.2d 1298 (1988). Pennsylvania courts have generally narrowly viewed the tort of intentional infliction of emotional distress. *Cory v. SmithKline Beckman Corp.,* 585 F.Supp. 871, 875 (E.D.Pa.1984). "Moreover, courts applying Pennsylvania law have failed to find conduct outrageous ... where an employer engaged in a premeditated plan to force an employee to resign by making employment conditions more difficult." *Cox,* 861 F.2d at 395, *citing Madreperla v. Willard Co.,* 606 F.Supp. 874, 880 (E.D.Pa.1985). In *Cox,* defendant fired plaintiff the day that plaintiff returned from triple by-pass surgery. 861 F.2d at 391. The Third Circuit found that even though defendant was aware of plaintiff's physically and mentally weak condition and fired him with the intent to deprive him of medical and disability benefits, this conduct did not rise to the level of outrageousness required for the tort of intentional infliction of emotional distress. *Id.* at 395.

To determine if defendant's conduct was outrageous, this court must view the facts in a light most favorable to the plaintiff and accept as true plaintiff's characterizations of defendant's actions. According to Mulgrew, Al Dubeck and James Curran deliberately and heinously plotted to terminate plaintiff, eventually firing him one week be-

fore Christmas under the guise of minor or trivial security violations. Plaintiff further points to defendant's "hatchet" memorandum, which outlined Mulgrew's future evaluations and eventual discharge, as well as the imposition of numerous and impossible job demands, as evidence of defendant's outrageous behavior.

■ Although working in such an adverse environment, knowing of your impending termination and being fired a week before Christmas is not an enviable position to be in, defendant's conduct does not rise to the level of outrageousness as required under Pennsylvania law. Defendant's actions, although harsh, were not so extreme as beyond all bounds of decency despite defendant's harmful motive and the resulting effects on plaintiff. Defendant's motion to dismiss Count II of plaintiff's complaint will be granted.

### Count III: Misrepresentation

■ Pennsylvania courts recognize a cause of action for the tort of misrepresentation. *Gibbs v. Ernst*, 647 A.2d 882, 890 (Pa. 1994). To sustain a cause of action the plaintiff must demonstrate the existence of the following elements: (1) a representation; (2) materiality, unless the misrepresentation is intentional or involves a non-privileged failure to disclose; (3) scienter, which may be actual knowledge or made with reckless indifference to the truth; (4) justifiable reliance on the misrepresentation; and (5) resulting injury proximately caused by the misrepresentation. *Wittekamp v. Gulf Western, Inc.*, 991 F.2d 1137, 1142 (3d Cir.1993); *Gibbs*, 647 A.2d at 889 (citing Page Keaton, Prosser and Keaton on the Law of Torts § 105; Restatement 2d of Torts § 525 (1977)). When considering defendant's motion for judgment as a matter of law "where fraud is the basis of the [plaintiff's] claim, the initial inquiry for the judge is whether the proof of every element has met the exacting [clear and convincing] standard, justifying refusal to grant" defendant's motion. *Wittekamp*, 991 F.2d at 1142 (citing *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243, 1253 (1983)).

■ Assuming all of plaintiff's allegations as true, there is a legitimate issue whether Mulgrew, based on his loyalty to his employer of twenty-one years, justifiably relied upon statements made by Dubeck and Curran concerning his future with Sears and his opportunity to improve in accordance with defendant's demands. Further, plaintiff contends that relying upon these assurances he continued to work for Sears and specifically refrained from seeking new employment. According to plaintiff, had he sought employment at this time, instead of after his termination when he was viewed as damaged goods, plaintiff would have been a stronger and more appealing job applicant. Such reliance may have injured Mulgrew in his present ability to find employment and caused financial losses. As to the element of scienter, plaintiff contends that the "hatchet" memo, written in June 1991, demonstrates defendant's intent to terminate Mulgrew in the future, and that his release just prior to Christmas on the basis of policy violations was merely pretence to carry out this plan.

Since plaintiff has demonstrated the elements of misrepresentation, defendant's motion to dismiss or for summary judgment for Count III will be denied.

### *ORDER*

AND NOW, this 4th day of October, 1994, upon consideration of defendant's motion to dismiss and/or for summary judgment pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 56, respectively, and for the reasons stated in the accompanying memorandum, it is hereby **ORDERED** that:

(1) Defendant's motion to dismiss Count I, wrongful discharge, and Count II, intentional infliction of emotional distress, is granted. Defendant's motion for summary judgment as to Counts I and II is thereby moot.

(2) Defendant's motion to dismiss and/or for summary judgment as to Count III, misrepresentation, is denied.

(3) Plaintiff having requested leave to file an amended complaint, leave is granted so long as the amended complaint is filed within 20 days of the date of this order and is

consistent with the terms of the memorandum opinion.