Michael A. SMYTH

v.

The PILLSBURY COMPANY.

Civil Action No. 95–5712.

United States District Court,
E.D. Pennsylvania.

Jan. 23, 1996.

98

Hyman Lovitz, Lovitz & Gold, P.C., Philadelphia, PA, Sidney L. Gold, Lovitz & Gold, P.C., Philadelphia, PA, for Plaintiff.

Steven R. Wall, Morgan, Lewis & Bockius, Philadelphia, PA, for Defendant.

### MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

In this diversity action, plaintiff, an at-will employee, claims he was wrongfully discharged from his position as a regional oper-

ations manager by the defendant. Presently before the court is the motion of the defendant to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons which follow, the motion is granted.

■ A claim may be dismissed under Fed.R.Civ.P. 12(b)(6) only if the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994). The reviewing court must consider only those facts alleged in the Complaint and accept all of the allegations as true. *Id.* Applying this standard, we find that plaintiff has failed to state a claim upon which relief can be granted.

Defendant maintained an electronic mail communication system ("e-mail") in order to promote internal corporate communications between its employees. Complaint at ¶ 8. Defendant repeatedly assured its employees, including plaintiff, that all e-mail communications would remain confidential and privileged. Complaint at ¶ 9. Defendant further assured its employees, including plaintiff, that e-mail communications could not be intercepted and used by defendant against its employees as grounds for termination or reprimand. Complaint at ¶ 10.

In October 1994, plaintiff received certain e-mail communications from his supervisor over defendant's e-mail system on his computer at home. Complaint at ¶ 11. In reliance on defendant's assurances regarding defendant's e-mail system, plaintiff responded and exchanged e-mails with his supervisor. *Id.* At some later date, contrary to the assurances of confidentiality made by defendant, defendant, acting through its agents, servants and employees, intercepted plaintiff's private e-mail messages made in October 1994. Complaint at ¶ 12. On January 17, 1995, defendant notified plaintiff that it was terminating his employment effective February 1, 1995, for transmitting what it deemed to be inappropriate and unprofessional comments[1] over defendant's e-mail

---

1. Defendant alleges in its motion to dismiss that the e-mails concerned sales management and contained threats to "kill the backstabbing bas-

tards" and referred to the planned Holiday party as the "Jim Jones Koolaid affair."

system in October, 1994. Complaint at ¶¶ 13, 14.

■ As a general rule, Pennsylvania law does not provide a common law cause of action for the wrongful discharge of an at-will employee such as plaintiff. *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 614 (3d Cir.1992); *Paul v. Lankenau Hospital*, 524 Pa. 90, 93, 569 A.2d 346, 348 (1990); *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). Pennsylvania is an employment at-will jurisdiction and an employer "may discharge an employee with or without cause, at pleasure, unless restrained by some contract." *Henry v. Pittsburgh & Lake Erie Railroad Co.*, 139 Pa. 289, 297, 21 A. 157, 157 (1891). See also, *Johnson v. Resources for Human Development, Inc.*, 843 F.Supp. 974, 979 (E.D.Pa.1994); *Brown v. Hammond*, 810 F.Supp. 644, 645 (E.D.Pa.1993) (An employer's right to terminate an at-will employee is "virtually absolute".); *Yetter v. Ward Trucking Corp.*, 401 Pa.Super. 467, 585 A.2d 1022 (1991).

■ However, in the most limited of circumstances, exceptions have been recognized where discharge of an at-will employee threatens or violates a clear mandate of public policy. *Borse*, 963 F.2d at 614; *Clay v. Advanced Computer Applications*, 522 Pa. 86, 88, 559 A.2d 917, 918 (1989) (If discharge of at-will employee threatens clear mandates of public policy, there is a cause of action against the employer.); *Geary*, supra. A "clear mandate" of public policy must be of a type that "strikes at the heart of a citizen's social right, duties and responsibilities." *Novosel v. Nationwide Insurance Co.*, 721 F.2d 894, 899 (3d Cir.1983). This recognized public policy exception is an especially narrow one. *Burkholder v. Hutchison*, 403 Pa.Super. 498, 589 A.2d 721, 724 (1991). To date, the Pennsylvania Superior Court has only recognized three such exceptions.

■ First, an employee may not be fired for serving on jury duty. *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978). The Reuther court cited the Pennsylvania constitution as well as the Pennsylvania statutes in concluding that "the necessity of having citizens freely available for jury service is just the sort of 'recognized facet of public policy' alluded to by our Supreme Court in Geary." 386 A.2d at 121.

■ Second, an employer may not deny employment to a person with a prior conviction. *Hunter v. Port Authority of Allegheny County*, 277 Pa.Super. 4, 419 A.2d 631 (1980). The *Hunter* court relied on federal court decisions as well as Pennsylvania statutes and Pennsylvania court decisions before concluding that the defendant violated the Pennsylvania constitution and "the deeply ingrained public policy of this State ... to avoid unwarranted stigmatization of and unreasonable restrictions upon former offenders." 419 A.2d at 636, n. 5.

■ And finally, an employee may not be fired for reporting violations of federal regulations to the Nuclear Regulatory Commission. *Field v. Philadelphia Electric Company*, 388 Pa.Super. 400, 565 A.2d 1170, 1180 (1989). That court held that the alleged discharge was against public policy because federal law required the employee to report violations and he was an expert in the area and there was no evidence that he bypassed any internal chain of command. 565 A.2d at 1180.

■ As evidenced above, a public policy exception must be clearly defined. *See also, McGonagle v. Union Fidelity Corp.*, 383 Pa.Super. 223, 556 A.2d 878, 885 (1989), appeal denied, 525 Pa. 584, 575 A.2d 115 (1990) ("Unless an employee identifies a 'specific' expression of public policy violated by his discharge, it will not be labelled as wrongful and within the sphere of public policy"). The sources of public policy can be found in "legislation, administrative rules, regulation, or decision; and judicial decisions ... Absent legislation, the judiciary must define the cause of action in case by case determinations." *Borse*, 963 F.2d at 619, n. 6 (3d Cir.1992) *quoting Cisco v. United Parcel Services, Inc.*, 328 Pa.Super. 300, 306, 476 A.2d 1340, 1343 (1984); *Krajsa v. Keypunch, Inc.*, 424 Pa.Super. 230, 622 A.2d 355, 358 (1993); *see also, Smith v. Calgon Carbon Corp.*, 917 F.2d 1338, 1344 (3d Cir.1990), cert. denied, 499 U.S. 966, 111 S.Ct. 1597, 113 L.Ed.2d 660 (1991) ("[A] 'clear mandate of public policy'

[is] embodied in a constitutionally or legislatively established prohibition, requirement, or privilege."). *Whitney v. Xerox*, C.A.No. 94–3852, 1994 WL 412429 (E.D.Pa. August 2, 1994) slip op. at 3–4.

 Plaintiff claims that his termination was in violation of "public policy which precludes an employer from terminating an employee in violation of the employee's right to privacy as embodied in Pennsylvania common law." Complaint at ¶ 15.[2] In support for this proposition, plaintiff directs our attention to a decision by our Court of Appeals in *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611 (3d Cir.1992). In *Borse*, the plaintiff sued her employer alleging wrongful discharge as a result of her refusal to submit to urinalysis screening and personal property searches at her work place pursuant to the employer's drug and alcohol policy. After rejecting plaintiff's argument that the employer's drug and alcohol program violated public policy encompassed in the United States and Pennsylvania Constitutions, our Court of Appeals stated "our review of Pennsylvania law reveals other evidence of a public policy that may, under certain circumstances, give rise to a wrongful discharge action related to urinalysis or to personal property searches. Specifically, we refer to the Pennsylvania common law regarding tortious invasion of privacy." *Id.* at 620.

The Court of Appeals in *Borse*, observed that one of the torts which Pennsylvania recognizes as encompassing an action for invasion of privacy is the tort of "intrusion upon seclusion." As noted by the Court of Appeals, the Restatement (Second) of Torts defines the tort as follows:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion

would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B. Liability only attaches when the "intrusion is substantial and would be highly offensive to the 'ordinary reasonable person.'" *Borse*, 963 F.2d at 621 (citation omitted). Although the Court of Appeals in *Borse* observed that "[t]he Pennsylvania courts have not had occasion to consider whether a discharge related to an employer's tortious invasion of an employee's privacy violates public policy", the Court of Appeals predicted that in any claim where the employee claimed that his discharge related to an invasion of his privacy "the Pennsylvania Supreme Court would examine the facts and circumstances surrounding the alleged invasion of privacy. If the court determined that the discharge was related to a substantial and highly offensive invasion of the employee's privacy, [the Court of Appeals] believe that it would conclude that the discharge violated public policy." *Id.* at 622. In determining whether an alleged invasion of privacy is substantial and highly offensive to a reasonable person, the Court of Appeals predicted that Pennsylvania would adopt a balancing test which balances the employee's privacy interest against the employer's interest in maintaining a drug-free workplace. *Id.* at 625. Because the Court of Appeals in *Borse* could "envision at least two ways in which an employer's drug and alcohol program might violate the public policy protecting individuals from tortious invasion of privacy by private actors" *id.* at 626, the Court vacated the district court's order dismissing the plaintiff's complaint and remanded the case to the district court with directions to grant Borse leave to amend the Complaint to allege how the defendant's drug and alcohol program violates her right to privacy.

Applying the Restatement definition of the tort of intrusion upon seclusion to the facts

---

**2.** Although plaintiff does not affirmatively allege so in his Complaint or in his memorandum of law in opposition to defendant's motion to dismiss, the allegations in the Complaint might suggest that plaintiff is alleging an exception to the at-will employment rule based on estoppel, i.e. that defendant repeatedly assured plaintiff and others that it would not intercept e-mail communications and reprimand or terminate based on

the contents thereof and plaintiff relied on these assurances to his detriment when he made the "inappropriate and unprofessional" e-mail communications in October 1994. The law of Pennsylvania is clear, however, that an employer may not be estopped from firing an employee based upon a promise, even when reliance is demonstrated. *Paul v. Lankenau Hospital*, 524 Pa. 90, 569 A.2d 346 (1990).

and circumstances of the case *sub judice*, we find that plaintiff has failed to state a claim upon which relief can be granted. In the first instance, unlike urinalysis and personal property searches, we do not find a reasonable expectation of privacy in e-mail communications voluntarily made by an employee to his supervisor over the company e-mail system notwithstanding any assurances that such communications would not be intercepted by management. Once plaintiff communicated the alleged unprofessional comments to a second person (his supervisor) over an e-mail system which was apparently utilized by the entire company, any reasonable expectation of privacy was lost. Significantly, the defendant did not require plaintiff, as in the case of an urinalysis or personal property search to disclose any personal information about himself. Rather, plaintiff voluntarily communicated the alleged unprofessional comments over the company e-mail system. We find no privacy interests in such communications.

In the second instance, even if we found that an employee had a reasonable expectation of privacy in the contents of his e-mail communications over the company e-mail system, we do not find that a reasonable person would consider the defendant's interception of these communications to be a substantial and highly offensive invasion of his privacy. Again, we note that by intercepting such communications, the company is not, as in the case of urinalysis or personal property searches, requiring the employee to disclose any personal information about himself or invading the employee's person or personal effects. Moreover, the company's interest in preventing inappropriate and unprofessional comments or even illegal activity over its e-mail system outweighs any privacy interest the employee may have in those comments.

In sum, we find that the defendant's actions did not tortiously invade the plaintiff's privacy and, therefore, did not violate public policy. As a result, the motion to dismiss is granted.