**David P. WURST, Plaintiff,**

v.

**NESTLE FOODS CORPORATION, Defendant.**

**Civ. A. No. 90–1083.**

United States District Court, W.D. Pennsylvania.

Dec. 7, 1991.

Samuel J. Cordes, Ogg, Jones, Desimone, & Ignelzi, Pittsburgh, Pa., for plaintiff.

Paul Monroe Heylman, Katherine Brewer, Schmeltzer, Aptaker, & Shepard, P.C., Washington, D.C., J. Frank McKenna, III, Babst, Calland, Clements, and Zomnir, Pittsburgh, Pa., for defendant.

### MEMORANDUM ORDER

COHILL, Chief Judge.

This action was referred to United States Magistrate Judge Gary L. Lancaster in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1), and Rules 3 and 4 of the Local Rules for Magistrates. On November 22, 1991, the Magistrate Judge filed his Report, which concluded that defendant's motion for summary judgment should be granted. Plaintiff filed timely objections to the Report. After *de novo* review of the pleadings and documents in the case, together with the Magistrate Judge's Report and objections thereto, the following ORDER is entered this day of 7th December, 1991:

Defendant's motion for summary judgment is granted.

The Report filed by Magistrate Judge Lancaster is adopted as the Opinion of the Court.

### REPORT

LANCASTER, United States Magistrate Judge.

This is an action for wrongful discharge and related claims. Jurisdiction is based

on diversity of citizenship. 28 U.S.C. § 1332. Before the court is defendant's motion for summary judgment. For the reasons set forth herein, defendant's motion should be granted.

## I. BACKGROUND

Unless otherwise indicated, the following is undisputed. Plaintiff Wurst was hired by defendant Nestle Foods Corporation in January 1986. Until the summer of 1988, he worked as a Territory Manager in Nestle's Food Service Division with responsibility for the western half of Pennsylvania and surrounding environs. In performing that job, he testified that he spent 80% of his time traveling to visit his current and prospective customers.

At a sales convention in May, 1988, Wurst injured his back while picking up a brief case. In July, 1988, Wurst began receiving workmen's compensation benefits equal to two-thirds of his salary. He still has not recovered to the extent necessary to return to work.

In July, 1989, defendant adopted a formal written policy addressing employees who are out of work for an extended period of time on medical leave. That portion relevant to our inquiry provided that when an employee takes workmen's compensation leave, he is entitled to a full six months of leave before his position is filled, thereafter, for an additional six months he is entitled to reinstatement to an open position in his region. If at the end of twelve full months the employee is still physically unable to return to work, he is automatically discharged with no right to reinstatement.[1]

On September 22, 1989, the company's personnel director advised Wurst that pursuant to the new company policy, he was being terminated because twelve months had passed since Wurst had worked and he was still unable to return to work.

Plaintiff's complaint asserts three separate counts for relief. In count one, he claims wrongful discharge. In count two, he contends that defendant discharged him with the sole intent to harm him. In count three, plaintiff claims that he is due wages for work he performed while on disability leave, pursuant to Pennsylvania's Wage Payment and Collection Law. 43 Pa.Stat. Ann. § 260.1 et seq. ("WPCL").

## III. STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. Rule 56(c). A "material fact" is one whose resolution will affect the ultimate determination of the case. S.E.C. v. Seaboard Corp., 677 F.2d 1289, 1293 (9th Cir.1982).

To demonstrate entitlement to summary judgment, the defendant, as the moving party, is not required to refute the essential elements of the plaintiff's case. The defendant need only point out the insufficiency of the plaintiff's evidence offered in support of those essential elements. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Houser v. Fox Theatres Management Corp., 845 F.2d 1225, 1229 (3d Cir.1988). Once that burden has been met, the plaintiff must identify affirmative evidence of record which supports each essential element of his cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986).

Therefore, in order to defeat a properly supported motion for summary judgment, a plaintiff can not merely restate the allegations of his complaint, Farmer v. Carlson, 685 F.Supp. 1335 (M.D.Pa.1988), nor can he rely on self-serving conclusions unsup-

---

1. Employees who are disabled and unable to work, but are not on workers' compensation receive job protection for three months, and in unusual circumstances this period may be extended up to six months. They have fewer reinstatement benefits during these six months than persons receiving workers' compensation, and no reinstatement benefits after the first six months.

ported by specific facts in the record. Plaintiff must point to concrete evidence in the record which supports each essential element of his case. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. If the plaintiff fails to provide such evidence, then he is not entitled to a trial and defendant is entitled to summary judgment as a matter of law.

With these concepts in mind, the Court turns to the merits of defendant's motion.

## IV. DISCUSSION

### A. *Wrongful discharge*

■ As a general rule, in the absence of a specific statutory or contractual restriction, Pennsylvania does not recognize a cause of action for the wrongful discharge of an at-will employee. *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917, 918 (1989). However, in *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974), the Supreme Court of Pennsylvania recognized an exception to the general rule and held that an at-will employee may have a legitimate wrongful discharge claim against her employer if her discharge threatens clearly mandated public policy. *See also Yaindl v. Ingersoll–Rand Co.*, 281 Pa.Super. 560, 422 A.2d 611 (1980).

Recently, the Superior Court of Pennsylvania in *Macken v. Lord Corp.*, 402 Pa.Super. 1, 585 A.2d 1106 (1991), impliedly, if not expressly, held that an allegation of discharge in retaliation for filing a workmen's compensation claim states a cause of action for wrongful discharge in violation of public policy. The court stated:

> Although there is no Pennsylvania Supreme Court decision squarely on point, developing Pennsylvania law suggests there can now be a cause of action for discharge in retaliation for filing workmen's compensation claims.

*Id.* 585 A.2d at 1108 (citing *Rabatin v. Columbia Lines, Inc.*, 790 F.2d 22 (3d Cir. 1986)).

Moreover, federal courts that have addressed the issue have, without exception, held that Pennsylvania recognizes the public policy exception for at-will employees where an employee has been terminated allegedly in retaliation for filing a claim for workmen's compensation benefits. *See Burns v. United Parcel Service, Inc.*, 757 F.Supp. 518 (E.D.Pa.1991); *James v. International Business Machines Corp.*, 737 F.Supp. 1420, 1428 and n. 6 (E.D.Pa.1990); *Aquino v. Sommer Maid Creamery, Inc.*, 657 F.Supp. 208, 212 (E.D.Pa.1987); *Alexander v. Red Star Express Lines, Inc.*, 646 F.Supp. 672, 678 (E.D.Pa.1986), *aff'd without op.*, 813 F.2d 396 (3d Cir.1987); *Galbraith v. Phillips Information Sys.*, No. 83–6118, slip op., 1986 WL 6536 (E.D.Pa. June 10, 1986); *Michelson v. Exxon Research & Engineering Co.*, 629 F.Supp. 418, 426 (W.D.Pa.1986), *aff'd*, 808 F.2d 1005 (3d Cir.1987).

The instant case, however, is not that clean. Plaintiff concedes that there is no evidence to show that defendant intended to retaliate against him personally. Rather, it is undisputed that the defendant discharged plaintiff due to a company-wide policy. Nonetheless, plaintiff contends that his discharge is actionable because the court should consider any discharge based on absences due to work-related injuries to be a *per se* violation of public policy and actionable as a wrongful discharge. In support of his argument, plaintiff has cited case law from other jurisdictions which have held that it is a violation of public policy and state workmen's compensation law to discharge an employee for absences due to work-related injuries. *See, i.e., Caldwell v. Columbus Developmental Center*, 47 Ohio App.3d 100, 547 N.E.2d 417 (1989); *Griffin v. Eastman Kodak Co.*, 80 A.D.2d 689, 436 N.Y.S.2d 441 (3d Dept.1981); *LoDolce v. Regional Transit Service, Inc.*, 77 A.D.2d 697, 429 N.Y.S.2d 505 (3d Dept.1980);[2] *County of Santa Barbara v. Workmen's Compensation Ap-*

---

2. The holdings in *Griffin* and *LoDolce* are brought into question by a subsequent decision of the New York Court of Appeals in *Duncan v. New York State Developmental Center*, 63

N.Y.2d 128, 481 N.Y.S.2d 22, 470 N.E.2d 820 (1984), wherein the court disapproved of the *per se* analysis and required proof of retaliatory intent.

*peals Bd.,* 109 Cal.App.3d 211, 167 Cal. Rptr. 65 (1980). In each of these cases, the decision was based on a specific section of that state's workmen's compensation law which expressly prohibited discharge or other discrimination against an employee because such employee claimed compensation from such employer. The courts interpreted those statutes to mean that absences due to work-related injuries could not be counted against the employee.

Here, however, plaintiff has no such statutory protection nor has the plaintiff directed us to any Pennsylvania case law which has expanded the perimeters of this common-law exception to the at-will presumption to the extent urged by plaintiff. On the contrary, in *Macken v. Lord Corp.,* 402 Pa.Super. 1, 585 A.2d 1106 (1991), the Pennsylvania Superior Court, though recognizing the cause of action, determined that the evidence of record failed to establish that plaintiff's discharge was in retaliation for filing a workmen's compensation claim and found for that defendant employer. A fair reading of the *Macken* case does not support plaintiff's claim for a *per se* analysis.

In summary, we find no support for plaintiff's argument that his discharge violated clearly mandated public policy. It is one thing to recognize that an employer violates public policy by discharging an employee in retaliation for having filed a workmen's compensation claim. However, it requires a quantum leap in both law and logic to read into that concept that one who is receiving workmen's compensation benefits is, by that reason, immune from discharge regardless of whether he is, or even will be, physically able to perform his job. For us to so hold would expand the *Geary* principle well beyond the scope intended by the Pennsylvania courts.

Finally, those states that have afforded injured workers the right of unconditional reinstatement did so through legislative enactment. The Pennsylvania legislature clearly has the legal authority to enact

---

**3.** Apparently prior to this termination, Nestle had continued to provide plaintiff with health

similar legislature. We deem it significant that it has chosen not to do so. If Pennsylvania workers are to secure the type of job security plaintiff seeks, it is up to the Pennsylvania legislature to bring it about, not the federal courts. Summary judgment should enter for defendant.

### B.

■ Plaintiff's second claim is that defendant discharged him with the intent to harm him. He contends that his discharge was timed so as to cut off his health benefits at a time immediately prior to a scheduled operation on his back of which Nestle had knowledge.[3]

In *Yetter v. Ward Trucking Corp.,* 401 Pa.Super. 467, 585 A.2d 1022 (1991), the Superior Court of Pennsylvania recited the history of this type of claim in Pennsylvania jurisprudence and concluded that it had been abrogated by two recent Pennsylvania Supreme Court cases, *Clay v. Advanced Computer Applications,* 522 Pa. 86, 559 A.2d 917, and *Paul v. Lankenau Hospital,* 524 Pa. 90, 569 A.2d 346 (1990). We are compelled to follow this holding.

Accordingly, summary judgment should be entered for defendant on Count II.

### C.

■ Finally, in Count III plaintiff made a claim for wages he allegedly earned for work performed while on workmen's compensation. The Pennsylvania Wage Payment and Collection Law, 43 Pa. S.A. § 260.1 *et seq.* ("WPCL"), provides:

> Whenever an employer separates an employe from the payroll, or whenever an employee quits or resigns his employment, the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable.

*Id.* at § 260.5(a). The WPCL creates no substantive right to wages, but is merely a vehicle for separated employees to recover

benefits.

those wages that are otherwise contractually due them.

This claim is based on plaintiff's allegation that while he was on workmen's compensation leave, his supervisor, Bob Bruno, instructed him to continue working his territory. Accordingly, Wurst contacted his customers by telephone and continued to promote sales in his area. Nestle continued to send him sales reports, continued to reimburse him for his business-related expenses, and also continued to supervise him through its managers. Wurst also continued to call Nestle's message center twice a day as is required by all employees.[4]

The purpose of the Workmen's Compensation Act is to provide money benefits in lieu of earned wages to an employee who can not perform his job due to a work-related injury. Thus, it is axiomatic that an injured worker can not recover both benefits and wages. Plaintiff has failed to direct us to any Pennsylvania authority which would support such double recovery on similar facts, nor has our research revealed any.

Moreover, it is undisputed that plaintiff was receiving workmen's compensation benefits for total disability during the relevant period of time. A finding of total disability presupposes that the recipient's earning capacity is entirely destroyed so that he cannot obtain any remunerative employment. *See Leaver v. Midvale Co.,* 162 Pa.Super. 393, 57 A.2d 698 (1948); *see also Hughes v. H. Kellogg & Sons,* 139 Pa.Super. 580, 13 A.2d 98 (1940). It is, at the very least, inconsistent for plaintiff, while claiming entitlement to and receiving total disability benefits, to also claim he earned wages during the same time.

Accordingly, summary judgment should be entered for defendant on Count III, also.

---

4. During the first four months Wurst received workers' compensation benefits, he also received his regular salary checks. A dispute developed over the return of the payroll checks that had been sent to Wurst during the time he was on workers' compensation. When the company requested the overpayment be returned, Wurst refused to do so until he received a corrected W–2, which the company refused to issue until he returned the money. Ultimately, in early September 1989, the standoff was resolved when the company sent a corrected W–2 to Wurst's attorney, whereupon Wurst returned the overpayment.