## Shick v. Shirey

*Ronald T. Elliott,* for plaintiff.
*H. John Drayer,* for defendant.

ALEXANDER, *P.J.,* July 24, 1995—Donald L. Shirey, defendant, has filed preliminary objections to the complaint filed by David L. Shick, plaintiff. At issue is whether plaintiff has stated a recognized cause of action, where he alleges that he was fired from his job by defendant in retaliation for filing a workers' compensation claim. For the reasons that follow, this court sustains defendant's objection, as plaintiff has not alleged a recognized cause of action in Pennsylvania.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On May 5, 1994, plaintiff filed a complaint against defendant alleging that defendant had terminated the plaintiff's employment in retaliation for exercising his rights under the Workers' Compensation Act, which, according to plaintiff, is in violation of public policy. Plaintiff also alleged emotional distress, and requested counsel fees. Defendant filed preliminary objections on the basis that Pennsylvania does not recognize a cause of action for retaliatory discharge of an at-will employee who files a workers' compensation claim, and that Pennsylvania law does not recognize a claim for emotional distress and attorney's fees based on the facts as alleged by plaintiff. Plaintiff then filed an amended complaint, which eliminated the claims for emotional distress and counsel fees, but still alleged a cause of action for wrongful discharge. Defendant once again has filed preliminary objections, on the basis that no such cause of action exists in Pennsylvania.

When determining whether a complaint states a recognized cause of action, the allegations as set forth in the complaint must be accepted as true. *Bower v. Bower,* 531 Pa. 54, 611 A.2d 181 (1992). Furthermore, such a preliminary objection should be granted only in the clearest cases, and sustained only in cases that are free from doubt. *Id.* at 57, 611 A.2d at 182. Therefore, in deciding this case, this court will assume that defendant fired plaintiff in retaliation for filing a workers' compensation claim.

Plaintiff's complaint alleges the following facts, which this court will assume are true for the purpose of this order. Defendant operates a business known as Donald L. Shirey Lumber, which is located in New Bethlehem, Clarion County, Pennsylvania. In October 1991, defendant hired plaintiff as an employee at-will, with no written contract. On September 13, 1993, while employed by defendant, plaintiff injured his left knee while pushing a cart, which resulted in surgery on December 13, 1993. Plaintiff received workers' compensation benefits through March 1, 1994. On that date, plaintiff was released to return to work, and notified defendant of the same. On that date, defendant informed plaintiff that he no longer had a job due to the pursuit of his workers' compensation claim. Plaintiff alleged that he has been unable to find gainful employment in the almost 16 months since defendant discharged him. Accordingly, plaintiff now requests lost wages and lost insurance benefits. Defendant argues that plaintiff has failed to state a cause of action.

## II. DISCUSSION

Plaintiff asserts that Pennsylvania has recognized a cause of action for retaliatory discharge of an at-will employee for the pursuit of a workers' compensation claim. In support, plaintiff relies on dicta in one Superior Court case, as well as a handful of federal cases that

recognized a cause of action in a diversity suit. Before turning to plaintiff's authority, this court will discuss the history of the at-will doctrine.

## A. *The History of the At-Will Doctrine*

The employment at-will doctrine was established in Pennsylvania by the Pennsylvania Supreme Court in the seminal case of *Henry v. Pittsburgh & Lake Erie Railroad Co.,* 139 Pa. 289, 21 A. 157 (1891). The court adopted a rule which presumed a general or indefinite hiring, absent a written contract, to be at-will, and an employer could terminate such a relationship with or without cause. *Id.* at 297. This rule supplanted the prior English rule, where such relationships were presumed to be one year in length, and a premature termination by either party required a one month notice period, and entitled the servant to a pro rata sum for the time actually served. See 1 *W. Blackstone, Commentaries,* *425.

For approximately 80 years, the Pennsylvania at-will rule remained steadfastly rigid. Then, in *Geary v. United States Steel Corporation,* 456 Pa. 171, 319 A.2d 174 (1974), the Pennsylvania Supreme Court, in dicta, suggested that the rigid confines of the at-will doctrine may be relaxed in certain instances. The plaintiff, Geary, an at-will employee of 14 years, complained that a certain product manufactured by U.S. Steel, his employer, was unsafe and posed a danger. Geary's supervisors ignored his complaints. Undaunted, Geary continued to speak out, and even complained to a vice-president in charge of sales. U.S. Steel ceased to manufacture the product, and fired Geary. Subsequently, Geary sued U.S. Steel, contending that his dismissal was "wrongful, malicious and abusive." *Id.* at 174, 319 A.2d at 175. The Supreme Court affirmed the trial court's dismissal of Geary's complaint.

Geary's complaint was grounded both in tort and public policy aspects of contract. As for the tort theory, which concerned unjust interference with prospective advantage, the Supreme Court indicated that specific intent must be alleged where the interference is prospective rather than existing. *Id.* at 179, 319 A.2d at 178. "[A] bare recitation that [the employer] had acted 'intentionally, wrongfully, maliciously, fraudulently, deceitfully and without justification' did not satisfy the specific intent requirement." *Id.* at 179, 319 A.2d at 178. As for the public policy, although Geary was acting in the best interests of both his employer and the general public, this did not establish a cause of action.

However, the Supreme Court indicated in dicta that there may be an exception to the at-will doctrine where a termination violates a clear mandate of public policy. The court said:

"[T]here are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened. The notion that substantive due process elevates an employer's privilege of hiring and discharging his employees to an absolute constitutional right has long since been discredited. But this case does not require us to define in comprehensive fashion the perimeters of this privilege, and we decline to do so. We hold only that where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge." *Id.* at 184-85, 319 A.2d at 180.

Under the public policy exception alluded to in *Geary,* an employee who can show that his discharge violated public policy, assuming that there was no legitimate

and plausible reason for that termination, can make out a cause of action despite his at-will status. *Cisco v. United Parcel Services Inc.,* 328 Pa. Super. 300, 303, 476 A.2d 1340, 1341 (1984); *Yaindl v. Ingersoll-Rand Co.,* 281 Pa. Super. 560, 571, 422 A.2d 611, 617 (1980). An employee must establish that there has been a "violation of a clearly mandated public policy which 'strikes at the heart of a citizen's social right, duties, and responsibilities.' " *Turner v. Letterkenny Federal Credit Union,* 351 Pa. Super. 51, 55, 505 A.2d 259, 261 (1985). This public policy exception is narrow, *Marsh v. Boyle,* 366 Pa. Super. 1, 8, 530 A.2d 491, 495 (1987), and is "closely bounded by the employer's right to run his business as he sees fit." *Paul v. Lankenau Hospital,* 375 Pa. Super. 1, 14, 543 A.2d 1148, 1155 (1988), *rev'd on other grounds,* 524 Pa. 90, 569 A.2d 346 (1990). Pennsylvania has refused to recognize novel theories of public policy. *Darlington v. General Electric,* 350 Pa. Super. 183, 209, 504 A.2d 306, 319 (1986).

The Supreme Court subsequently clarified the dicta in *Geary* by stating:

"[A]s a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship. Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." *Paul v. Lankenau Hospital, supra* at 95, 569 A.2d at 348, citing *Clay v. Advanced Computer Applications Inc.,* 522 Pa. 86, 89-90, 559 A.2d 917, 918 (1989).[1] *(E.g., Reuther v. Fowler & Williams Inc.,* 255 Pa. Super. 28,

---

1. In his brief, plaintiff fails to mention either *Clay* or *Lankenau.* Instead, plaintiff approaches the issue as if *Geary* were still the only Supreme Court case concerning the public policy exception to the at-will doctrine.

386 A.2d 119 (1978) (employee cannot be discharged for serving on a jury)).

In *Lankenau,* the court cited with approval the following language from Mr. Chief Justice Nix's concurring opinion in *Clay:*

"[T]his court did not announce a cause of action for wrongful discharge in *Geary.* . . . Indeed, the language in *Geary* clearly states that a cause of action for wrongful discharge in an at-will employment relationship does not exist." *Lankenau, supra* at 95, 569 A.2d at 348, citing *Clay, supra* at 98-99, 559 A.2d at 923 (Nix, C.J., concurring).

The Supreme Court restated the current rule approximately two months ago as "[t]he law in Pennsylvania is abundantly clear that, as a general rule, employees are at-will, absent a contract, and may be terminated at any time, for any reason or for no reason." *Stumpp v. Stroudsburg Municipal Authority,* J-20-1995, Decided May 16, 1995.

### B. *Pennsylvania's Recognized Exceptions to the At-Will Rule*

Pennsylvania's appellate courts have explicitly recognized a clear mandate of public policy in only a handful of instances.[2] In *Reuther v. Fowler & Williams Inc., supra,* the court recognized a cause of action for a dismissal for choosing to serve on jury duty in lieu

---

2. Several courts have included *Hunter v. Port Authority of Allegheny County,* 277 Pa. Super. 4, 419 A.2d 631 (1980) as an additional example of a recognized mandate of public policy. See *e.g., Michelson v. Exxon Research and Engineering Co.,* 629 F. Supp. 418, 426 (W.D. Pa. 1986). Although the court did speak of mandates of policy, a careful reading of *Hunter* reveals that the dispute concerned a government entity refusing to employ a pardoned convict. Furthermore, as the case concerned government action, the rationale focused on constitutional law. Therefore, *Hunter* does not apply to the present case, as it concerned a refusal to hire, not wrongful termination.

of working. The court found that jury service was the sort of activity that implicated a recognized clear mandate of public policy. Given the historical importance of the jury system in our society, as reflected by both the U.S. and Pennsylvania Constitutions, the necessity of having citizens freely available for such service was found to be necessary. Furthermore, statutory law speaks of this public policy.[3]

In *Field v. Philadelphia Electric Co.,* 388 Pa. Super. 400, 565 A.2d 1170 (1989), the court recognized a cause of action for improper discharge of an employee who made a report as required by the Federal Nuclear Regulatory Commission. The court explained that because the employee was required to make such a report under federal law, this was the sort of recognized public policy that was contemplated by the court in *Geary.* Also, the court cited both the Three Mile Island and Chernobyl incidents as evidence of the great public concern for nuclear safety.

In *Kroen v. Bedway Security Agency Inc.,* 430 Pa. Super. 83, 633 A.2d 628 (1993), the court recognized a cause of action for wrongful discharge where an employee was fired for refusal to submit to a polygraph examination. The court reasoned that since the General Assembly proscribed the use of such a test in employment situations, making such action a misdemeanor

---

3. See 42 Pa.C.S. §4501 (Declaration of Policy) stating the policy of the Commonwealth regarding the right to a jury trial, and that all qualified citizens shall have an *obligation* to serve as jurors when summoned for that purpose, as well as 42 Pa.C.S. §4563 (Protection of Employment of Jurors) imposing both criminal and civil liability upon an employer who deprives an employee of his employment for responding to a jury summons. These sections are derived from former 17 P.S. §1301.1 and 17 P.S. §1301.18(a), adopted in 1972 and 1975, respectively. The *Reuther* court, however, only referred to former 17 P.S. §§1099 and 1336 in its opinion.

pursuant to 18 Pa.C.S. §7321, it comes within the parameters of a clear mandate of public policy.

On the other hand, there is a multitude of cases which declined to recognize the existence of a clear mandate of public policy. The following cases are examples where no violation of public policy was found: *Cisco v. United Parcel Services Inc., supra,* where an employee was discharged after being accused of theft and trespass in connection with his employment and was refused re-employment when acquitted of the charges; *Rossi v. Pennsylvania State University,* 340 Pa. Super. 39, 489 A.2d 828 (1985), where an employee was discharged for complaining about financial waste in his department (alleged public policy to save tax dollars); *McCartney v. Meadowview Manor Inc.,* 353 Pa. Super. 34, 508 A.2d 1254 (1986), where an employee was discharged for actively seeking a position with a competitor; *Turner v. Letterkenny Federal Credit Union, supra,* where an employee was discharged because of deteriorating relations with employees under his supervision; *Martin v. Capital Cities Media Inc.,* 354 Pa. Super. 199, 511 A.2d 830 (1986), where a newspaper employee was discharged for placing a commercial advertisement in a rival newspaper (alleged public policy was violation of Pennsylvania Constitution Article 1, Sections 1 and 7); *Betts v. Stroehmann Brothers,* 355 Pa. Super. 195, 512 A.2d 1280 (1986), where an employee was discharged even though he had done his job well (alleged public policy was the need to balance the interests of employers and employees); *Gillespie v. St. Joseph's University,* 355 Pa. Super. 362, 513 A.2d 471 (1986), where false accusations of criminal behavior led to discharge; *Marsh v. Boyle,* 366 Pa. Super. 1, 530 A.2d 491 (1987), where an employee claimed that every person has a right to earn a living in a job he chooses; *Rinehimer v. Luzerne County Community College,* 372 Pa. Super. 480, 539 A.2d 1298 (1988), where

a college president was discharged for insisting on audits which revealed illegal activities; *Paul v. Lankenau Hospital, supra,* where an employee was discharged for alleged unauthorized removal of discarded hospital equipment (alleged public policy in the Superior Court was the employer's violation of sections 2906 and 5108 of the Pennsylvania Crimes Code; in the Supreme Court, the policies of estoppel and detrimental reliance); *Scott v. Extracorporeal Inc.,* 376 Pa. Super. 90, 545 A.2d 334 (1988), where an employee was discharged for fighting on company property (alleged public policy was one's right to act in self-defense as articulated in section 505 of the Pennsylvania Crimes Code, 18 Pa.C.S. §505); *Hineline v. Stroudsburg Electric Supply Company Inc.,* 384 Pa. Super. 537, 559 A.2d 566 (1989), where an employee was discharged for dismantling his employer's allegedly illegal video camera; *McGonagle v. Union Fidelity Corp.,* 383 Pa. Super. 223, 556 A.2d 878 (1989), where general counsel for an insurance company was discharged for his refusal to approve mailings and other matters which he believed violated insurance laws of various states; *Clay v. Advanced Computer Applications Inc., supra,* where husband and wife employees were discharged where wife allegedly rebuffed sexual advances made by a manager; *Krajsa v. Keypunch Inc.,* 424 Pa. Super. 230, 622 A.2d 355 (1993), where employee was discharged for advising "proper authorities" that the employer was violating their contracts with governmental and private parties (alleged public policy was Pennsylvania's Whistle-Blower Law, 43 P.S. §1421 et seq.); *Dietz v. Round Hill Foods Inc.,* 49 D.&C.3d 222 (1987), where employee was discharged in retaliation for filing a workers' compensation claim; *Elliott v. Horizons Unlimited,* 3 D.&C.4th 264 (1989), where employee was discharged in retaliation for filing a workers' compensation claim.

From this multitude of state precedent, this court finds that a workable rule of law emerges. Such a rule is reflected by two Adams County Court of Common Pleas decisions. See *Dietz v. Round Hill Foods Inc., supra; Elliott v. Horizons Unlimited, supra.* In both cases, the precise cause of action upon which plaintiff bases the present action was summarily rejected. First, the at-will doctrine is a rule that is virtually absolute. There are only a few exceptions, all of which are based upon clear mandates of public policy. These mandates fall into two general categories. First, an employer cannot require an employee to commit a crime, or prevent an employee from complying with a statutorily imposed duty. See *e.g., Reuther v. Fowler & Williams Inc., supra* (jury duty); *Field v. Philadelphia Electric Co., supra* (report to Federal Nuclear Regulatory Commission); *Geary v. United States Steel Corporation, supra* (employee was not required by statute to monitor safety of products, hence no cause of action). Second, an employer may not compel an employee to act or perform some task that the employer is prohibited by statute from requiring. See *e.g., Kroen v. Bedway Security Agency Inc., supra.* Of course, if the employer has some other reason for the discharge, the employee's legal action will be unsuccessful.

## C. *Plaintiff's Argument and Support*

Despite this apparent rule of law, based upon the recent Supreme Court pronouncements in *Clay* and *Lankenau,* as well as other recent Superior Court decisions, plaintiff nonetheless asserts that "Pennsylvania has recently recognized a cause of action for retaliatory firing of an individual for filing a worker's [sic] compensation claim." (Plaintiff's brief at 3.) Plaintiff never explains what particular mandate of public policy was violated by defendant's action, but instead cites *Macken v. Lord Corporation,* 402 Pa. Super. 1, 585 A.2d 1106

(1991), as well as federal diversity cases. This court finds that plaintiff's reliance on both *Macken* and federal case law is misplaced.

### 1. Plaintiff's Reliance on *Macken v. Lord Corporation* Is Misplaced

In *Macken,* a material handler was injured on the job when a 500 pound drum fell against his abdomen. This employee began to receive total disability benefits. Approximately 14 months later, the employee's treating physician released him to return to light duty work. When the employer learned of this release, he ordered the employee to return to work the next day. The employee informed his employer of his continued poor condition, and that he had a previously scheduled doctor's appointment. The employer offered the employee time off for the doctor's appointment. Despite this, the employee subsequently failed to return to work, and was dismissed for insubordination.

The employee brought suit in the Crawford County Court of Common Pleas,[4] alleging, inter alia, wrongful discharge in retaliation for filing a workers' compensation claim. Following a non-jury trial, the court found that the employee failed to present sufficient evidence to sustain the wrongful discharge claim, and accordingly granted a nonsuit. The employee appealed, arguing that the entry of nonsuit was improper, and that the employer had improperly attempted to alter his disability status without regard for section 408 of the Workers' Com-

---

4. For some reason, both parties insist that this case originated in Allegheny County. (See plaintiff's brief at 3; defendant's brief at 6.) The case was originally tried in Crawford County, before Judge P. Richard Thomas, who today is a Senior Retired Judge of the Crawford County Court of Common Pleas. This is significant, because it undercuts defendant's argument that the trial court in *Macken* was bound to find a cause of action due to a prior court of common pleas decision in the same county.

pensation Act, a claim which the employee never pled in the trial court, but only raised on appeal. The employer never took issue with whether the employee stated a recognized cause of action, so that issue was not before the court. The court found the employee's charges "to be devoid of merit." *Id.* at 6, 585 A.2d at 1109.

The court dealt only briefly with the retaliatory termination issue. Instead, it indicated that the employee's section 408 argument constituted "the crux of [the employee's] argument on appeal." *Id.* at 5, 585 A.2d at 1109. In its brief discussion of the wrongful termination issue, the court said that, "[a]lthough there is no Pennsylvania Supreme Court decision squarely on point, developing Pennsylvania law suggests there can now be a cause of action for discharge in retaliation for filing workers' compensation claims." *Id.* at 4, 585 A.2d at 1108. This language is a far cry from establishing a cause of action, as plaintiff asserts.

First, the language is clearly dicta, as it mentions "developing" law that "suggests" a cause of action. Plaintiff's assertion that *Macken* held that such a cause of action exists is wrong. "While *Macken* . . . suggests that such a claim might exist, there is no Pennsylvania appellate court decision holding that being discharged for being on workmen's compensation is sufficient to bring a wrongful discharge claim." *Kuzel v. Krause,* 658 A.2d 856, 860 (Pa. Commw. 1995). Similarly, other courts which have confronted the wrongful discharge issue have not cited *Macken* as authoritative. See *e.g., Krajsa v. Keypunch Inc., supra; Niehaus v. Delaware Valley Medical Center,* 429 Pa. Super. 119, 631 A.2d 1314 (1993).

Second, the *Macken* court assumed that such a cause of action existed, as it was not challenged on appeal. Next, the *Macken* court misstated the standard announced in *Geary.* The court speaks of "an important, well-recognized facet of public policy." *Macken, supra*

at 4, 585 A.2d at 1108. The correct standard, which is much more narrow, is a "clear mandat[e] of public policy." *Clay, supra* at 90, 559 A.2d at 918. Regardless of which standard is correct, the court never identified what particular policy had been violated. In fact, other language in the opinion indicates that no public policy was violated, as the court found "that [the employees] discharge was not violative of any facet of public policy." *Macken, supra* at 6, 585 A.2d at 1109. It is inconsistent to say that a cause of action, which hinges on public policy, has been recognized by a court which fails to recognize the underlying public policy.

Finally, the federal case relied upon by the Superior Court, *Rabatin v. Columbus Lines Inc.,* 790 F.2d 22 (3d Cir. 1986), in no way supports the recognition of a cause of action for retaliatory discharge. Instead, *Rabatin* involved an injured worker who brought a products liability suit against the manufacturer of equipment, and a negligence action against the owner of the equipment that he was using when he was injured.

### 2. Plaintiff's Reliance on Federal Case Law Is Misplaced

Plaintiff also asserts that "the wealth of federal case law unanimously interpreting Pennsylvania law" supports such a cause of action. (Plaintiff's brief at 5.) In particular, plaintiff relies on *Wurst v. Nestle Foods Corp.,* 791 F. Supp. 123 (W.D. Pa. 1991). This court finds that *Wurst* does not control the present case. First, the *Wurst* court misread *Macken.* The magistrate's report in *Wurst,* adopted by the district judge, indicated that: "[r]ecently, the Superior Court of Pennsylvania in *Macken* impliedly, if not expressly, *held* that an allegation of discharge in retaliation for filing a workmen's [sic] compensation claim states a cause of action for wrongful discharge." *Wurst,* 791 F. Supp. at 125. (citation omitted) (emphasis added) As discussed pre-

viously, the *Macken* court did not so hold. Instead, it mentioned in passing that there may be a cause of action, but such an issue was not before the court.

In addition, despite his assertion to the contrary, the federal case law does not unanimously support plaintiff's position. In fact, there are only a handful of federal trial court opinions that support plaintiff's contention. These federal opinions are unpersuasive because of two general flaws. First, these trial courts abandoned their limited judicial role, and misread the *Geary* dicta, construing it as a license to impose by judicial fiat their own subjective view of the proper bargaining relationship between labor and management. In so doing, federal trial courts ignored decisional law of the Third Circuit, failed to acknowledge the limited judicial role that has been adopted by Pennsylvania courts, and misapplied case law from other jurisdictions. In fact, it appears as though more recent federal courts, having been cognizant of the recent Supreme Court decisions in *Clay* and *Lankenau,* have rejected these few opinions which support plaintiff's position. See *e.g., Strange v. Nationwide Mutual Insurance Co.,* 867 F. Supp. 1209 (E.D. Pa. 1994); *Mulgrew v. Sears Roebuck & Co.,* 868 F. Supp. 98 (E.D. Pa. 1994). Second, the public policy upon which these federal courts based their recognition of an exception to the at-will doctrine is not one that has been mandated by Pennsylvania. These federal courts failed to recognize the history of workers' compensation law in Pennsylvania and ignored relevant legislative attempts at modifying the law.

The first way in which the federal trial courts abandoned their limited judicial role was by ignoring Third Circuit precedent. The Third Circuit had the opportunity to analyze the *Geary* exception in the case of *Bruffett v. Warner Communications Inc.,* 692 F.2d 910, 918 (1982). In describing the approach the Third Circuit would take in interpreting the *Geary* public policy exception, the court said:

"Because we are sitting in diversity, we are not free to follow our own inclinations as to the manner in which the common law should develop or to decide whether creation of a common law remedy . . . would be a wise and progressive social policy. We are instead constrained by the requirement that in diversity cases, 'a federal court must be sensitive to the doctrinal trends of the state whose law it applies, and policies which inform the prior adjudications by the state courts.' " *Id.* at 918. (citations omitted)

The court added that:

"It would be particularly inappropriate for a federal court to engage in state common law revision in view of the developing nature of the abusive discharge cause of action at the state level. One of the authentic obligations of federalism at the judicial level requires that we permit the state courts to decide whether and to what extent they will follow the emerging law." *Id.* at 920. (citations omitted)

Referring to the often quoted dicta of *Geary,* the court said, "[t]his language does not support plaintiff's exaggerated claim that the employer must hereafter offer 'a legitimate and plausible reason' for discharge." *Id.* at 918. The court concluded that "the holding in *Geary* itself signals a narrow rather than an expansive interpretation of the public policy exception." *Id.* at 918. (citations omitted)

The following year, a federal trial court ignored the mandates of *Bruffett,* and opined that *Geary* was a "landmark case," as it established a broad and sweeping exception to the at-will doctrine. *Rettinger v. American Can Company,* 574 F. Supp. 306 (M.D. Pa. 1983).[5]

---

5. Judge Rambo, the judge in *Rettinger,* derived her rationale from an Allegheny County Court of Common Pleas decision, *Butler v. Negley House Inc.,* 20 D.&C.3d 543 (1981), which she described as "thoughtful." This court finds that much of *Butler* has been implicitly overruled by Pennsylvania's appellate courts.

The *Rettinger* court assumed that because the *Geary* dicta spoke of public policy, this somehow entitled courts to usurp legislative functions, and rule on an ad hoc basis as to which public policies were, in the courts' opinion, recognized. A subsequent federal trial court, relying on *Rettinger,* succinctly illustrated this judicial activist mindset when it opined that "[i]n the absence of any description of the boundaries of this [public policy exception], the courts must determine case-by-case which public policies enjoy its added protection." *Michelson v. Exxon Research & Engineering,* 629 F. Supp. 418, 425 (W.D. Pa. 1986).[6]

These federal trial courts adopted and maintained this activist posture, despite language in Pennsylvania decisional law which dictated a more limited judicial role.[7] For example, the *Rettinger* court declared that

---

6. On appeal the Third Circuit would not rule that Pennsylvania recognizes a cause of action for wrongful discharge in retaliation for filing a workers' compensation claim, but rather determined that even if Pennsylvania embraced the cause of action, the evidence was insufficient to satisfy the plaintiff's burden. *Michelson,* 808 F.2d 1005 (3d Cir. 1987). This is identical to the approach utilized by the Superior Court in *Macken v. Lord Corp., supra,* as well as the Commonwealth Court in *Kuzel v. Krause, supra.*

7. Perhaps the most glaring example of the federal courts predisposition toward dictating policy preferences that are contrary to Pennsylvania's, is the case of *Novosel v. Nationwide Insurance Co.,* 721 F.2d 894 (1983). In *Novosel,* the Third Circuit Court of Appeals held that an at-will employee who was terminated for refusing to support his private employer's lobbying efforts contravened the First Amendment of the federal Constitution and Article I, Section 7 of the state Constitution. In its eagerness to dictate policy, the court failed to explain how the constitution was implicated by a private employer, who in no way could be characterized as a governmental actor. In considering the same policy, the Superior Court reached the opposite result. See *Martin v. Capital Cities Media Inc., supra.* Furthermore, the decision in *Novosel* is in direct contravention of

"[t]he argument that only the legislature may create a remedy for a wrongful discharge has been rejected by the appellate courts of [Pennsylvania]." *Rettinger,* 574 F. Supp. at 310, quoting *Butler, supra* at 552. The Superior Court, citing with approval the opinion of one commentator, has provided a contrary opinion: "Pennsylvania courts . . . should at this time avoid further modification of the at-will employment relationship." *Darlington v. General Electric, supra* at 191, 504 A.2d at 310, quoting K.H. Decker, *At-Will Employment in Pennsylvania—A Proposal For Its Abolition and Statutory Regulation,* 87 Dickinson L.Rev. 477, 479 (1983). The Superior Court, also in *Darlington,* said "the judicial process may be an inappropriate forum for such sweeping policy change." *Id.* at 191-92, 504 A.2d at 310. The Pennsylvania Supreme Court "specifically answered in the negative to the central question of 'whether the time has come to impose judicial restraints on an employer's power of discharge.' " *Lankenau, supra* at 94-95, 569 A.2d at 348, quoting *Geary, supra* at 177, 319 A.2d at 176.

A further attempt to legitimize such judicial activism is reflected by the federal courts' reliance on other jurisdictions' jurisprudence, in particular *Frampton v. Central Indiana Gas Co.,* 297 N.E.2d 425 (Indiana 1973), for the proposition that creating such a cause of action is not exclusively a legislative function. For example, one federal trial court stated that: "[t]he *Geary* court cited three cases in which causes of action for retaliatory discharges were recognized. One of the cited

the Third Circuit's prior holding in *Bruffett.* To accomplish this reversal, the Third Circuit had to ignore its own Internal Operating Procedures, which do not allow one panel to reverse a prior panel's interpretation of state law unless an intervening state Supreme Court decision has clearly announced the change. *Third Circuit Internal Operating P. VIII(C),* reprinted in 28 U.S.C.A. 78 (West Supp. 1984).

cases was . . . *Frampton* . . ., in which an employee who was discharged because she filed a workmen's compensation claim was found to have a non-statutory cause of action." *Rettinger,* 574 F. Supp. at 311. (citations omitted)

A careful reading of Indiana law repudiates the idea that *Frampton* was based on non-statutory grounds. In *Frampton,* the Indiana Supreme Court announced that a cause of action existed for termination of an employee who filed a workers' compensation claim. This holding was read broadly by the Pennsylvania Supreme Court in *Geary, supra,* which in footnote 16 cited *Frampton* as a case where "the mandates of public policy were clear and compelling." *Id.* at 184, 319 A.2d at 180. However, subsequent to this statement, the Adams County Court of Common Pleas noted that the Indiana courts revisited *Frampton:*

"[A]lthough the court in *Frampton* spoke in terms of public policy, it did so in the sense of enforcing a specific statutory prohibition against the use of any 'device' to relieve an employer of its obligation under the Workmen's Compensation Act. An attempt to declare any discharge unlawful where the reason for the discharge is contrary to general public policy was specifically rejected [by other cases]. Such a broad exception was left for legislative expression of what constitutes public policy or which of competing public policies should be given precedence." *Elliott v. Horizons Unlimited, supra* at 269-70, quoting *Rice v. Grant County Board of Commissioners,* 472 N.E.2d 213, 215 (Ind. App. 2d Dist. 1984). This interpretation of *Frampton* completely repudiates the statement of the federal court in *Rettinger.*

In fact, it appears as if the federal courts, in the wake of the Pennsylvania Supreme Court's pronouncements in *Lankenau* and *Clay,* have recently overruled themselves sub silentio. For example, in both *Strange*

*v. Nationwide Mutual Insurance Co., supra,* and *Mulgrew v. Sears Roebuck & Co., supra,* Pa. 1994), district courts, in listing examples of recognized mandates of public policy, never mention any of the workers' compensation cases. It appears that even the federal courts have realized that plaintiff's cause of action for wrongful discharge does not exist, as the federal cases which recognized such a cause of action have never been cited with approval by any Pennsylvania appellate court.[8] Therefore, these federal court opinions, which had appeared to be an oasis for plaintiff, were nothing more than a mirage in the desert of judicial activism.

By abandoning a restrained judicial role, the federal courts were free to recognize an exception to the at-will doctrine that has not been mandated by the people of Pennsylvania. These federal courts failed to recognize the history of workers' compensation law in Pennsylvania, and ignored relevant legislative attempts at modifying the law.

The federal courts have indicated that "[t]he Workmen's Compensation Act is humanitarian legislation which should be broadly construed to protect the employee." *Rettinger, supra* at 309, quoting *Butler, supra* at 549. From this premise, the court then dictated that "the case law must recognize [such] a claim . . ." *Rettinger, supra* at 310, quoting *Butler, supra* at 551. This court has been unable to locate any such mandate in the Workers' Compensation Act. Instead, the Superior Court interpreted the Act as mandating a different result:

---

8. For example, the Pennsylvania Supreme Court did not acknowledge the existence of the federal cases that created a cause of action for wrongful discharge based upon workers' compensation in either *Clay* or *Lankenau.* In fact, the court in *Clay* stated that "[e]xceptions to this rule have been recognized in only the most limited of circumstances . . . ." *Id.* at 89, 559 A.2d at 918.

"The courts of our Commonwealth have construed and applied the Workmen's Compensation Act liberally to effect its purpose. It is to be observed, however, that there is no public policy of the Commonwealth as to compensation of injured employees except that which is stated in the act. . . . This course may result in occasional hardship in particular cases, but immeasurably greater hardship will be imposed upon the public at large by abandoning such principles." *DeFelice v. Jones & Laughlin Steel Corp.,* 137 Pa. Super. 191, 8 A.2d 465 (1939).

Although the Workers' Compensation Act is certainly humanitarian in that it insures that injured employees receive compensation for work-related injuries, the Act only requires that the employee be compensated. It does not apply to other hardships that an employee may encounter. In the present case, plaintiff was compensated pursuant to the Act. Therefore, the purpose of the Act, as reflected by the following language, has been fulfilled: "[the Workers' Compensation Act's] primary and general purpose [is] to substitute a method of accident insurance in place of common law rights and liabilities for substantially all employees, except such as are by express terms or necessary implication excluded from its operation." *Blake v. Wilson,* 268 Pa. 469, 474, 112 A. 126, 128 (1920).

Also, "[t]here is no public policy of the Commonwealth as to compensation except as expressed in the compensation statutes." *Shindledeker v. New Bethlehem Borough,* 145 Pa. Super. 77, 80, 20 A.2d 867, 868 (1941).

Ultimately, "the law does not even seek to indemnify a man from all harms." *Holmes, The Common Law,* 115 (1881). The Workers' Compensation Act is designed as a limited statement to insure that injured employees are compensated for their injuries. To read a more broad purpose into the Act would open a Pandora's box of

decisions based not on a rule of law, but instead by judicial whim.[9] If a judge were to "discover" that the Workers' Compensation Act contained a policy as plaintiff proposes, what policies could the next judge then discover? Some federal trial courts found a "humanitarian" policy that favored the employee. However, humanitarian motives are inconsistent with the purpose of imposing such liability as argued by plaintiff on an employer. As Oliver Wendell Holmes observed, "[t]he true explanation of the reference of liability to a moral standard, in the sense which has been explained, is not that it is for the purpose of improving men's hearts, but that it is to give a man a fair chance to avoid doing the harm before he is held responsible for it." *Holmes* at 115.

Not only did the federal courts adopt an incorrect and unrecognized public policy, they developed a curious theory concerning the legislative intent dealing with a cause of action for a retaliatory firing. Somehow, the federal courts conclude that since no statutory remedy is available, such a remedy must exist. "[W]e find no basis for concluding that the omission in the Workmen's Compensation Act of a remedy for retaliatory action shows a lack of intent on the part of the legislature to create a right of recovery." *Rettinger, supra* at 310, quoting *Butler, supra* at 552-53. The *Rettinger* court somehow draws the inference that since the Workers' Compensation Act is so comprehensive, the legislature must have intended a remedy for discharge, even though it failed to so state.

---

9. In fact, it has been argued that as employees become more skilled, and in turn unique, their bargaining position will increase significantly. Accordingly, our entire system of labor laws may have to be changed, eliminating many of the current labor protections. See *Toffler, Creating A New Civilization: The Politics Of The Third Wave* 53 (1994).

This court draws the opposite conclusion. Because the Workers' Compensation Act is so detailed and exhaustive, the fact that such a remedy is not specified in the Act indicates that no such remedy was intended. As the Superior Court has said, "If larger provision should be made . . . in our workmen's compensation system, that provision should be made by the legislature." *Jones & Laughlin Steel Corp., supra* at 193, 8 A.2d at 466. As the federal courts have disregarded this maxim, their opinions do not accurately reflect the law of Pennsylvania. Similarly, federal courts, relying on the questionable logic of *Rettinger,* have never mentioned the fact that in 1981, a bill,[10] entitled the "Unjust Dismissal Act," was introduced in the Pennsylvania House of Representatives. This bill, which died in committee, provided procedures to protect employees for unjust dismissals and articulated remedies in the event of an unjust discharge.[11] Similarly, the entire Workers' Compensation Statute was revised in 1993, but no remedy for dismissal was enacted. This court finds that the failure of this proposed legislation indicates that the people of Pennsylvania have rejected such causes of action.

## III. CONCLUSION

In sum, this court holds that Pennsylvania does not recognize a cause of action for the discharge of an at-will employee in retaliation for filing a workers' compensation claim. This holding is consistent with Pennsylvania jurisprudence, in particular the Supreme Court decisions in *Geary, Lankenau,* and *Clay.* Although some federal trial courts have recognized such a cause of

---

10. H.R. 1742, 1981 Sess. (Pa. 1981).

11. See Note, *Public Policy Limitations to the Employment At-Will Doctrine Since Geary v. United States Steel Corporation,* 44 University of Pittsburgh L.Rev. 1115, 1135-36 (1983).

action, such decisions are inconsistent not only with Pennsylvania law, but with other federal courts. Ultimately, the decision of whether or not to recognize such a cause of action belongs to the people of Pennsylvania, acting through their elected representatives, not the judiciary. As such, plaintiff has failed to state a recognized cause of action.

Hence, the following order:

## ORDER

And now, July 24, 1995, defendant's preliminary objections are sustained.

### SUPPLEMENTAL OPINION

September 28, 1995—By a memorandum and order of July 24, 1995, this court sustained defendant's preliminary objections and held that plaintiff's complaint, alleging a retaliatory discharge of an at-will employee for pursuit of a workers' compensation claim, did not assert a recognized cause of action in Pennsylvania. (The July 24, 1995 decision)

On August 15, 1995 plaintiff filed a motion for reconsideration based upon the argument that the July 24 decision was incorrect because of the opinion of the Superior Court in *Highhouse v. Avery Transportation*, 443 Pa. Super. 120, 660 A.2d 1374 (1995) decided on July 11, 1995. On August 23, 1995 the plaintiff appealed the July 24 decision to the Superior Court.

This opinion is written, pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, for the purpose of addressing the issue of the effect of the *Highhouse* decision upon the decision of this court.

In *Highhouse* the Superior Court held that the discharge of an at-will employee because he made a claim for unemployment compensation during a period when he was not working would support a tort claim for wrongful discharge. The Superior Court found that the

discharge would threaten "clear mandates of public policy," which is the criteria laid down by the Supreme Court of Pennsylvania in *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974).

The Superior Court found this mandate of public policy in the Unemployment Compensation Law, Act of December 5, 1936, P.L. 1937, Article I, §3, 43 P.S. §752, which statute directs that "[n]o agreement by an employe to waive release, or commute his rights to [unemployment] compensation, or any other rights under [the Unemployment Compensation Law], shall be valid."

This finding by the Superior Court is consistent with the directive of the Supreme Court in *Geary* that, "[a]bsent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason." *Geary, supra* at 175, 319 A.2d at 176.

The case before this court involves not the unemployment compensation statute, but the Workers' Compensation Act (77 P.S. §1 et seq.). This statute contains no such statement which could be construed as a clear mandate of public policy. On the contrary, the legislature has refused to insert such a mandate into the workers' compensation law. (See memorandum and order of July 24, 1995, at 24 and 25)

Plaintiff relies, however, on the following statement in *Highhouse:* "Indeed, in *Macken v. Lord Corp.*, [402 Pa. Super 1, 585 A.2d 1106 (1991)], the Superior Court recognized a cause of action for discharge of an employee in retaliation for filing a worker's compensation claim. See also: *Rettinger v. American Can Co.*, 574 F. Supp. 306 (M.D. Pa. 1983)." *Id.* at 126, 660 A.2d at 1377. This statement in *Highhouse* is dictum and was unnecessary for the decision reached since *Highhouse* involved a completely different statute. The state-

ment in *Macken,* from which the dictum in *Highhouse* was derived, is discussed in detail by this court in the memorandum of July 24, 1995 at pages 12 to 15. The *Rettinger* case, also cited in *Highhouse,* as well as other federal cases, are discussed in the memorandum of July 24, 1995 at pages 15 to 25. There is no need to repeat this discussion since *Highhouse* has not caused any change in the law as it pertains to the facts of the instant case.

In summary, we find the *Highhouse* decision involves a completely different issue and that the dictum in the *Highhouse* opinion concerning the *Macken* case does no more to create an exception to the mandate of the Supreme Court in *Geary* than did the dictum in *Macken* itself. We still believe that if a "clear mandate of public policy" is to be found, it should come from the legislature and not from the courts.

